Mr. Justice NELSON
 

 delivered the opinion of the court.
 

 There has been a good deal of discussion between the learned counsel upon the questions, whether or not G-eneral Fremont possessed competent power, as commander of the military department, to make a valid contract with ’ the petitioner for the construction of the boats, in the absence of any authority from the Quartermaster-G-eneral or Secretary of War; and -if not, whether the delivery of the boats, acceptance by the secretary, and employment in the service of the government, did not operate as a ratification of the same? In the view the court have taken of the case, it- is not material how these questions are. answered. For the purposes of the decision, we may admit the competency of the power.
 

 
 *477
 
 The Secretary of War, subject to the authority of the President, is at the head of the department of the government on whom the duty devolved to provide these boats for the military expedition in contemplation by General Fremont, after their construction had been determined on. The head of the appropriate bureau of this branch of the service is the quartermaster-general, who is under the direction of the secretary.
 
 *
 
 And whether the contracts for the construction were' made by General Fremont or by the quartermaster-general, the source of the authority is the head of the War Department. And whether he makes the contracts himself, or confers the authority upon others, it is his duty to see that they are properly and faithfully executed; and if he becomes satisfied that contracts which he has made himself are being fraudulently executed, or those made by others were made in disregard of- the rights of the. government, or with the intent to defraud it, or are being unfaithfully executed, it is his duty to interpose, arrest the execution, and adopt effectual measures to protect the government against the dishonesty of subordinates. This duty is too plain and imperative to call for comments. As the head of the department under whose charge' the contracts were made and were being carried into execution, and over which he had the superintendence and control, he was responsible to the government for any detriment to its interests which it was reasonably v/ithin his power to prevent or remedy. We do not agree, therefore, that there was anything unusual, harsh, or unjustifiable on the part of thé secretary, if there existed well-grounded suspicions or facts unexplained,' tending strongly to the conclusion that eohtracts had-been entered into, and debts incurred, within this military district, in disregard of the rights of the government, in issuing the order to suspend the payment of all claims against it. This was a proper if not an indispensable step to prevent the consummation of the frauds. He would have been reqreant to his duty if he had acted otherwise; and
 
 *478
 
 after having thus suspended th,ese claims upon grounds and for the reason stated, which we are of opinion full}': justified him, unless some provision had been made affording an immediate'opportunity to the claimants to exhibit their claims, and éstablish their justice and integrity, their only remedy would have béen an appeal to Congress or to the Court" of Claims, which, as- then organized, h’ad no power to render judgment against the government. -Both these bodies were soon to- be in session at Washington, so that, without any great delay, they could have been presented there, examined, and-’allowed or rejected. But these tribunals were distant from the place where these contracts had been made and were being carried into .exception, and a resort to them ■ would have pccasioned delay and involved much expense. Under these circumstances, although they were thp appropriate and, we may say, only legal tribunals to investigate and adjust claims that the heads of departments had felt it their duty to suspend of reject, it was fit, and commendable in the secretary, to' appoint this board of commissioners to meet at once at á place where all the transactions had occurred out of which the claims and demands in dispute originatéd. It was impracticable for the secretary himself to hear and adjust them, even if the parties had desired it. The only 'immediate relief, therefore, within his power to provide, consistent-,with his duty under the circumstances, was to ■ appoint persons to represent him.
 

 ! We agree. -that this board' possessed no authority, nor would the secretary, if he had appeared in person, have possessed..any, to compel a hearing and adjustment' of the claims,- nor did they hold themselves out as possessing any s,uch .authority. The'board were constituted for the simple purpose' of affording to such claimants as might desire a tribunal to speedily hear and decide upbn their claims, witli'out the delay and expense of resorting to those which the law had'recognized or provided. It was-to relieve them from the hardship resulting from the suspension of the payment, a-s far as was in the power.of the secretary; a suspension which he had' felt compelled to order, under the circum
 
 *479
 
 stances, from a sense of duty to government.
 
 We
 
 cannot, therefore, appreciate the force of the argument that has been urged on behalf of these claimants, that the facility thus furnished by the board to hear and pass upon their claims, in some way operated compulsorily, to submit them for investigation; not legally, but morally; and that their necessities compelled them to seek this early opportunity to have them heard and adjusted. This, we think, a misapprehension. It was not so much the presence of this board that compelled the submission,1 if any compulsion existed, but the certainty, if the opportunity was not accepted, they would be obliged to encounter the delay and expense of an application to Congress or the Court of Claims. Thé constitution of the board presented simply a choice of tribunals to hear these claims. It was their preference for the tribunal sitting in their midst, and the high character of its members, that controlled the choice. This tribunal also afforded an additional advantage over .the others, namely, that if after the hearing and adjustment of the claims the claimants were not satisfied,.they were free to dissent, and look for redress to the only legal tribunals provided in such cases.
 

 It has been strongly argued, that the receipt in full of all demands, which the board exacted from the claimant before the delivery of the voucher, or finding, was unauthorized; or, if authorized,, that it is no bar to that portion of the original claim rejected by the board, as it is an instrument subject to explanation; that a receipt for payment in full, when only part of the debt is paid, is no defence to an action for the balance; and, further, that it was signed under pror' test. In the view we have taken of the case, the giving of this receipt is of no legal importance. The bar to any further legal demand against the government does not rest upon this acquittance, but upon the voluntary submission of the claims to the board; the hearing, and final decision thereon; the receipt of the vouchers containing the sum' or amount found'due to the claimant; aud- the acceptance of the payment of that amount, under the act of Congress providing therefor. From the time the secretary issued his
 
 *480
 
 order, suspending the payment, and which we have held was well justified, under the circumstances, they must be regarded as claims disputed-by the government; and unless this board had been constituted, could have been, adjusted only by Congress or the Court of Claims. They fell within that mass of claims which the heads of the several departments had refused to adjust according to the-views of the claimants, and this was the character that attached to them when presented before the board.
 
 We
 
 do not doubt but that there have been, and may be hereafter, cases where payments have been mistakenly or wrongfully withheld, and the claimant compelled either to give up his claim or seek redress before the appropriate tribunals, existing at the time, to hear and determine them. But this is no argument against the power or right of the heads of the departments to refuse the payment. What other remedy has the government to arrest the execution of fraudulent contracts, made by its subordinates, or the unfaithful execution of them? In such cases, the courts are open to protect the rights of private individuals, but this remedy is unavailable to the government. The multitude of agents, official and otherwise, which it is obliged to employ in conducting its affairs, render this remedy utterly impracticable. Unless, therefore, some power exists in the government, summarily, to interfere, and arrest the frauds and irregularities committed against it, they must be allowed to go on to-consummation. No one, we think, on reflection, will deny this power.
 

 A good deal of the argument on the part of the claimant in support of the right to recover the contract-price of these boats, is placed upon the ground of the absence of-any authority-in the board of commissioners to pass,
 
 in im-itum,
 
 upon the claims. We have conceded t-his waut of authority. They possessed no judicial power; nor did they claim to exercise any. The' government having suspended all payment upou the contracts upon allegations of frauds and irregularities, until au inquiry could be had in respect to them, appointed this board as a favor -to its creditors, 'to enable those who might desire it .to have an immediate in
 
 *481
 
 vestigation. It was an act of kindness to them. They were left free, however, to present or withhold their claims. But we find nothing in -the constitution of the board, or in its proceedings, or in the proceedings on the part of the government, indicating expressly, or by implication, that when the investigation was thus voluntarily submitted to, the amount adjusted, and the acceptance of payment by the claimant, the proceeding was not to be final. It could hsjrdl
 
 y
 
 have been supposed or believed by the claimants themselves, that the government would have gone to the expense of furnishing them a tribunal in their midst for this investigation, and subject itself also to the expense of carrying it on in the eases submitted to its cognizance as a matter of mere-preliminary inquiry to adjust parts or portions of a contract, and make advances thereon, leaving the residue for further litigation before Congress, or the Court of Claims. This is not the course of litigation between private parties'; they are not allowed to split -up an entire contract or demand.into • several parts; and wo are not aware of any reason for an exception to the rule in a proceeding against the government. We cannot think that a further hearing before
 
 any
 
 other tribunal of the same matters was within the’contemplation of either party.
 

 The hearing before this board was had more than a year before the present Court of Claims was established, under the act of Congress of March 3,1863, which authorizes suits and judgments against' the government. Previously, the only remedy of the creditor was by an application to Congress, or to the Court of Claims, which was established in 1855, but possessed no authority to render judgment against it. It was but a commission appointed by the government to hear and pass upon claims, but whose determination had no force till confirmed by Congress. It differed from the commission in the present ease, as it was established by law, and had general authority to hear all claims; but, so far as respects the cases of voluntary submission before the board, we regard the finding, followed by acceptance of payment, as conclusive upon the claim as if it had been before this
 
 *482
 
 first- Court of Claims, and heard and decided there, and the amount found due paid by the government. Now,' we suppose that it would be an error in the Court of Claims, as at present constituted, with .power to render j udgment against the government, to hear and revise the allowance of a claim already heard and decided upon by Congress,- or by the' former Court of Claims, and payment made, even if the claimant was not satisfied. And, we think, it is equally error, in the present case, upon the same principle and for the'same reasons.
 

 Indeed, unless the claimant is barred, under the circumstances stated, it would be difficult for the government to determine when there would be an end to claims put forth against it, as there is no statute of limitations, of which we are aware, applicable to them before this court. ■
 

 The judgment of the court is, that the decree must be reversed, the cause remanded, with directions to enter a decree -
 

 Dismissing the petition.
 

 *
 

 1 Stat. at Large, 696;
 
 4
 
 Id. 173; 5 Id. 257; Regulations of 1861, art. 1064