# THE UNITED STATES, EX REL. THE INTERNATIONAL CONTRACTING COMPANY,

*v.*

# LAMONT.

---

BIDS FOR PUBLIC WORK; ESTOPPEL; GOVERNMENT CONTRACTS; MANDAMUS; HEADS OF DEPARTMENTS.

1.  Where a contracting company bidding under an advertisement by the Government, for proposals for the improvement of a certain harbor, after the rejection of its first bid, makes a second and lower bid for the work under a new advertisement, which last bid is accepted, and the company voluntarily enters into the performance of a contract based upon the last bid, it is concluded as to any supposed rights under the first proposal, and cannot assert that the first bid should have been accepted and so hold the Government for the difference in price between the first and last bid.

2.  Sec. 3744 R. S. U. S. prescribes the form and manner in which contracts on behalf of the Government shall be entered into by its officers and agents, and in effect prohibits any other mode of making such contracts; and it is not within the power of a court on mandamus to declare that to be a complete and binding contract which the statute declares in effect not to be so without certain formalities.

3. Mandamus will lie to enforce a duty plainly ministerial when the right of the petitioner is clear and he is without other adequate remedy ; but it will not lie in a case where its effect is to direct or control the head of an executive department in the discharge of an executive duty involving the exercise of judgment and discretion.

4. To determine whether the proposal of a bidder under an advertisement by the Government for proposals for public work, conforms to all the specifications and conditions under which it is made, requires the exercise of judgment and discretion on the part of the head of the Department under whom the work is done and who makes such contracts, and is more than the performance of a mere ministerial duty for the breach of which mandamus will lie.

5. Whether the head of a Department has the power to reverse the final determination of his predecessor in rejecting a bid to perform public work, and to direct the execution of a contract with the bidder, *quaere.*

6. The acts of Congress of March 23, 1883, and August 11, 1888, conferring upon the Secretary of War power to regulate and prescribe forms for letting contracts for public work, do not modify R. S. U. S. Sec. 3744, to the extent of dispensing with the formal execution of such contracts as a prerequisite to their legality and binding effect after the acceptance of proposals.

7. Where in instructions to bidders for doing public work it is provided that any conditions, limitations or provisos attached to proposals will be liable to render them informal and cause their rejection, and the right is reserved to the Government to reject any and all bids, and a proposal filed departs from the terms of the specifications as to the time for the performance of the work, the bid so made may be properly rejected by the head of the Department authorized to enter into contracts for such work, notwithstanding the previous approval and acceptance of the bid by a subordinate.

No. 284. Submitted February 9, 1894.—Decided March 5, 1894.

HEARING on an appeal by the relator from an order of the Supreme Court of the District of Columbia, holding a law term, dismissing a petition for a writ of mandamus. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is an application by the appellant, the International Contracting Company, for a writ of mandamus to the Secretary of War of the United States, requiring that official, as the head of the department, to execute or cause to be executed and delivered to the appellant a certain contract, the blank form of which is appended to the petition as part thereof.

It appears that Congress, by the river and harbor appropriation bill of July 13, 1892, made appropriation for the improvement of Gowanus Bay channels in the harbor of the city of New York; and the money was required to be expended " under the direction of the Secretary of War and the supervision of the chief of engineers."

Specifications of the. work proposed to be done, accompanied with general instructions to bidders and the conditions for letting the work, were duly prepared under the supervision of Col. Gillespie, of the corps of engineers of the United States, at the engineer's office in New York, and . sealed bids or proposals were advertised for, to be opened on the 14th of September, 1892, at the engineer's office in New York. By the advertisement, all persons desiring to bid for the work were informed that specifications, blank forms, and all available information would be furnished on application to the office. The general instructions and conditions embraced in the specifications, with reference to which all bids were required to be made, contained some thirty-five articles or clauses. And among these we find the following provisions:

" 17. Any conditions, limitations or provisos attached to proposals will be liable to render them informal and cause their rejection."

" 23. The United States reserves the right to reject any and all bids, and to waive any informality in the bids received; also to disregard the bid of any failing bidder or contractor known as such to the engineer department."

" 25. The contract which the bidder and guarantors promise to enter into shall be, in its general provisions, in the form adopted and in use by the engineer department of the army; blank forms of which can be inspected at this office, and will be furnished, if desired, to parties proposing to put in bids. Parties making bids are to be understood as accepting the terms and conditions contained in such form of contract."

" 28. A copy of the advertisement, specifications and in-

structions will be attached to the contract and form a part of it."

And, in regard to the time within which the work was required to be done, the specifications declared that "work *must* be commenced on or before October 1, 1892, and be completed on or before December 31, 1893."

The appellant was one of several parties who made proposals; and it proposed to do the dredging of the different channels of the bay at the rate of 19.7 cents per cubic yard, scow measurement. And in the proposal it says: "One of the said dredges with its scows to commence operations within 90 days of the awarding of the contract, and the other dredge to commence operations 9 months thereafter, and the entire work to be completed on or before June 1, 1894." Thus, by this proposed modification of the limitation of time, as prescribed in the specifications, the term for doing the work was extended six months. It was further provided in the proposal, that in the event of an epidemic prevailing in the locality, the appellant *reserved* the privilege of ceasing the work *until prudent to resume*. But whose judgment was to determine the question of the prudence as to when the work should be suspended, or when to be resumed, was left entirely indefinite. It was with this proposal to take the work that the appellant offered readiness to execute the blank form of contract appended to the specifications, referred to in the proposal.

The appellant was the lowest bidder for the work; and its proposal was approved and recommended for acceptance by the local engineer at New York, and it was approved and authorized to be accepted by the chief of engineers at Washington, and the appellant was so notified. But the Secretary of War (Elkins) declined to accept or approve the bid, and ordered its rejection. In regard to the action of the Secretary of War, upon the subject-matter then pending, and before any contract had been signed or executed by any of the parties thereto, the appellant in its petition alleges:

"But said Secretary of the Department of War, after

hearing the relator, and overruling its plea and claim that he had neither power nor jurisdiction to recall or reconsider said acceptance of the relator's said proposal, refused to either execute or cause to be executed formal articles of agreement between the relator and said Government for the doing of said work in Gowanus Bay, and, on the contrary, instructed the chief of said corps of engineers not to enter into any such articles of agreement, or to recognize in any way the rights of this relator under its said proposal and the acceptance thereof as aforesaid, giving as his reasons for this action: First. That said acceptance of the bid of the relator was not properly made, and was not binding on the Government; Second. That said bid and the bid of the W. H. Beard Dredging Company, thereafter named and referred to, which was the next lowest bid, were irregular and improper, and that neither should be accepted; and, Third. That all said bids should be rejected, and the work should be readvertised."

The work was readvertised, as directed by the Secretary of War; and the time for doing the work, under the new advertisement, was for commencement on the 5th of April, 1893, and the completion on August 1, 1894. The time for opening the bids under the new advertisement was December 21, 1892.

At the second letting of the work, under the new advertisement, the appellant became a bidder for the work, and was the lowest bidder therefor; the proposal then made was to do the same work proposed to be done in the former proposal, at the rate of 13.7 cents per cubic yard, scow measurement: The amount of work covered by each of the proposals was about nine hundred thousand cubic yards; and the price of the work in the last proposal was less in the aggregate than the first by nearly sixty thousand dollars. This last proposal was duly accepted on the part of the Government, and the contract for the work was duly awarded and formally executed, and the appellant has entered upon the performance of the work, and has already

performed a considerable part thereof, under the contract based upon the second bid or proposal of the appellant made as just stated.

It is alleged that, at the time this last bid or proposal was made, the appellant notified the engineer in charge that it did not, by making the second proposal, waive any rights that had accrued to it under the first proposal. But it is not perceived how this can alter the effect of the last bid, and the contract based thereon.

It is also alleged that legal proceedings had been taken against Stephen B. Elkins, the former Secretary of War, to assert the rights of the appellant, founded upon the first proposal and alleged acceptance thereof; but that such proceedings abated in the Supreme Court of the United States, upon the retirement of said Elkins from the position of Secretary of War; and that thereupon demand was made upon the respondent, the present Secretary of War, for the execution of the contract based upon the first proposal, alleged to have been accepted. But, according to the allegation, the present Secretary wholly rejected the request; and did so for the reason, as he stated, that his predecessor had declined to enter into such contract, and, for the additional reason, that the appellant is "now under contract to do the work for about two-thirds the amount named in its first proposal, and that he saw no justification for entering into another contract with the appellant, or for paying it $100,000 more than its contract calls for."

The prayer of the petition is, that the writ of mandamus may issue to the present Secretary of War, commanding him, in his official capacity, to execute or cause to be executed, articles of agreement in the form of the blank contract furnished to the appellant from the office of the engineer and filed with its proposal of September 14, 1893, and to permit the appellant also to execute such articles of agreement, and thereupon to deliver the same to the appellant.

The respondent, the present Secretary of War, in obedience to the rule to show cause, appeared and demurred to

the petition. And it was thereupon stipulated by the parties, that the rule to show cause should be considered as embracing the facts set forth in the petition, and should be taken as and stand for an alternative writ of mandamus, to which the demurrer should be considered as filed.

Upon hearing the demurrer, the court below discharged the rule to show cause, and dismissed the petition; from which order this appeal is taken.

*Mr. A. S. Worthington* for the relator, appellant (and with him were *Messrs. Dudley & Michener* and *Messrs. Sullivan & Cromwell* on the brief):

1. The unconditional acceptance by the War Department of the relator's proposal of September 14, 1892, completed a contract from which neither of the parties thereto was thereafter at liberty to withdraw without the consent of the other. The parties to a contract are bound, unless it appears that a condition of the agreement is that it shall not take effect until the formal writing has been prepared and signed. *Chinnock* v. *Marchioness of Ely*, 4 De G. J. & S., 638; *Bonnewell* v. *Jenkins*, L. R. 8, Ch. Div., 70; *Rossiter* v. *Miller*, 39 L. T. Rep., N. S., 173; *Cheney* v. *Eastern Transp. Line*, 59 Md., 557; 3 Am. & Eng. Enc. of Law, 854; etc., and notes. Where competitive bids or proposals are invited and the prosposal of one of the bidders is accepted, the contract is complete, although, as is nearly always the case, both parties expressly contemplate executing thereafter a formal instrument evidencing the contract. *Adams* v. *U. S.*, 1 Court of Claims, 192; *Moore* v. *U. S.*, 1 Ct. Cl., 90; *Schneider* v. *U. S.*, 19 Ct. Cl., 547; *McCollums Case*, 17 Ct. Cl., 92; *Garfielde* v. *U. S.*, 93 U. S., 242. In the present case it was well understood by both parties that the acceptance of the relator's proposal completed a contract between them. Act of Congress of April 10, 1878, 20th St., 36. The specifications under which appellant bid, stated that it would be required to enter into a contract with the United States.

2. The acceptance was authorized. The Secretary of

War "exercises control through the bureaus of the War Department." Par. 1813, Army Regulations, Record, p. 27. Powers imposed by law upon the President may be exercised by the heads of departments in their own names, and the heads of departments may carry on the work of their several offices through the instrumentality of subordinate officers acting in their own names. Nine-tenths of the business of the Government is transacted in this way. *Williams* v. *U. S.*, 1 How., 290; *Parker* v. *U. S.*, 1 Pet., 293; *The Confiscation Cases*, 20 Wall., 109; *United States* v. *Eliason*, 16 Pet., 301; *Miller* v. *Mayor of N. Y.*, 109 U. S., 394.

3. The acceptance of the relator's proposal of September 14, 1892, completed a valid contract between the parties, notwithstanding the provisions of Section 3744 of the Revised Statutes. *Clark* v. *U. S.*, 95 U. S., 539; *Iron Co.* v. *U. S.*, 118 U. S., 37; *Harvey* v. *U. S.*, 105 U. S., 671.

4. The provision in the relator's proposal of September 14, 1892, as to the time of beginning and completing the work, and as to suspending the work during the prevalence of an epidemic did not render the acceptance void. 27 Stat., 90. The specifications themselves disclose that the time mentioned in them for doing the work was to be considered merely as an approximation. Under the head of "*Time*" it is announced, first, that the work must be commenced on or before October 1, 1892, and completed on or before December 31, 1893; and, next, that "contractors proposing to build special plant for this work will so state in their bids, mentioning the date at which they will contract to begin work." See *Salomon* v. *U. S.*, 19 Wall., 17; *Manuf. Co.* v. *U. S.*, 17 Wall., 592; *Chicago* v. *Greer*, 9 Wall., 726.

It is important to bear in mind the enlarged discretion of the heads of executive departments in matters of this kind. *United States* v. *Adams*, 7 Wall., 463; *Parker* v. *United States*, 1 Peters, 293; *United States* v. *Speed*, 8 Wall., 77. It is impossible to read these decisions in connection with

the specifications in question and the acts of March 3, 1883, 22 Stat., 487, and August 11, 1888, 25 Stat., 423, without being forced to the conclusion that the acceptance by the War Department of the relator's bid containing a reasonable modification of the time within which the work in question was to be done, was a matter entirely within the discretion of that Department, and not such a departure from the specifications as rendered absolutely void the acceptance and any formal contract that might be entered into thereunder.

There is no middle ground. The acceptance was good and completed the contract, or it was void. If void, the vice would have extended to the formal articles of agreement had they been prepared, and the relator could have refused to sign them or to comply with them with impunity. Had that course been pursued and this were a suit by the Government on the relator's bond, would *we* be heard to say that there was no contract?

5. The duty of the Secretary of War, to cause articles of agreement to be signed in this case, is a ministerial duty, and not one involving the exercise of discretion. R. S. U. S., Sec. 3744; *Kendall* v. *U. S.*, 5 Cr. C. C., 163; 12 Pet., 524; *Butterworth* v. *Hoe*, 3 Mackey, 229; 112 U. S., 50; *U. S.* v. *Schurz*, 102 U. S., 378; *Ins. Co.* v. *Wilson's Heirs*, 8 Pet., 291; *In re W. & G. R. R. Co.*, 140 U. S., 92.

6. The relator has no adequate remedy except by mandamus. The situation here is substantially the same as in the above mentioned cases of *Butterworth* v. *Hoe, supra*, and *United States* v. *Schurz, supra*. The title of the relator is complete and what it seeks to obtain is the proper evidence thereof. The only other possible remedy would be an action against the Secretary of War for damages for failing to execute a formal contract as required by Section 3744. The Supreme Court of the United States has twice decided that this is not such a remedy as will defeat an application for a mandamus. *Kendall* v. *The United States, supra ; United States* v. *Black*, 128 U. S., 52.

7. The relator's rights are not affected by its bidding at

the second letting. The question here is not what the United States shall pay the relator for doing this work. The Government is not a party to this proceeding. It was upon this very ground that the Supreme Court of the United States in *The United States* v. *Boutwell*, 17 Wallace, 604, held that a suit like this abates when the respondent goes out of office. This relator, if its contention here be correct, became entitled on the 22d day of September, 1892, to have the Secretary of War prepare and sign and deliver to it a formal paper evidencing the contract which was completed on that day. Whether the relator by its subsequent actions has lost its right under that contract cannot be determined now. The United States cannot be sued here and cannot be sued anywhere without its consent, but if this relator desires to submit its claim for the difference between the two contracts, either to the Court of Claims or to the Congress of the United States it is entitled to present as a part of its case the formal written contract which Section 3744 requires the Secretary of War to execute. In short, the question here is not what are the rights of the relator under the contracts in question, but to what evidence of these rights it is entitled. It has the right to be put in the position it would have occupied had Secretary Elkins executed and delivered to it formal articles of agreement under its first bid and *then* relet the work. The War Department cannot take advantage of its own wrong.

8. Nor does it make any difference that a new Secretary has come into office. Whenever such a change occurs in the head of that Department, there must be in the various bureaus thereof cases of accepted proposals where the formal contract has not been signed. If the duty to sign or to cause to be signed has devolved, under Section 3744, upon the Secretary for the time being, that duty necessarily is imposed upon his successor. It requires two parties to make a contract, and two parties are bound when it is made. Would anybody suggest that when a change of this kind occurs in such an office all persons who have filed proposals

which have been accepted are released from their obligations in case the formal paper required by the law has not been prepared?

The rule that a government official is bound by the decision of his predecessor in particular cases has no application when the ruling refers to a mere ministerial duty. Where discretion is vested in an official, and it has been exercised upon evidence submitted, his successor may not reopen the case except when a clear mistake has been made or where newly-discovered evidence makes a different case. But a decision by an official that he will not comply with a statute manifestly does not give his successors any excuse for continued disobedience.

*Mr. A. A. Birney*, United States Attorney for the District of Columbia, and *Mr. C. H. Arms*, Assistant United States Attorney, for the respondent, appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

Upon the statement of the case, three questions arise for consideration:

1. Whether the appellant is not effectually concluded, as to any supposed rights it may have had under its first proposal for the work, by making the second proposal therefor, and entering into the contract upon the basis of such last proposal.

2. Whether, as there was no contract made and executed as required by the statute, the whole subject-matter was not within the judgment and discretion of the Secretary of War, as to the right of having the formal contract executed, and therefore not the subject of mandamus.

3. Whether, by the terms and conditions under which the first proposal was made, there was not full reserved right and power in the Secretary of War to disapprove and reject the bid or proposal of the appellant.

1. With respect to the first of these questions, the position of the appellant is certainly anomalous. Upon the rejection by the Secretary of War of the first proposal by the

appellant, the latter elected to become a bidder at a second letting of the work, and at a different price, and has not only entered into the formal contract as required upon the basis of the second bid, but has partly executed the work under that contract; and it now seeks to revert back to its first proposal, and to have that formulated into a regular binding contract upon the United States; and thus have two subsisting contracts for the same work, and calling for compensation at essentially different rates. To justify this there must be shown to exist some peculiar and extraordinary element in the transaction, that would take it out of the ordinary course of affairs, and warrant a legal construction of the facts that does not often arise. There is no pretence that there was any mistake that led the appellant into the making of the second bid or proposal and the entering into the contract awarded thereon for doing the work. Nor is there the slightest ground for contending that there was duress, either legal or moral, which coerced the appellant into making the second bid, and complying with the terms of the specifications and conditions prescribed to those who desired to contract for doing the work, at prices supposed to be profitable to themselves.

The Government, in rejecting the first proposal and readvertising the work for new proposals, put the appellant to its election, either to stand by its first proposal, and take the chance of maintaining it, or to waive all claim or pretension thereunder, and become a new bidder under the second offer of the work. This election the appellant made. If it did not intend to stand by the second bid or proposal in good faith, it ought to have refrained from bidding altogether at the second offer. A remedy was then open to it, and which would have afforded adequate redress, if the present claim was well founded. For, as said by the Supreme Court, in the case of *Board of Liquidation* v. *McComb*, 92 U. S., 531, 541, when a plain ministerial duty is threatened to be violated by some positive official act, " any person who will sustain personal injury thereby, for

which adequate compensation cannot be had at law, may have an injunction to prevent it. In such cases the writs of mandamus and injunction are somewhat correlative to each other." The court is not asked to displace the contract made on the second bid by the contract to be executed under the first proposal made; but the two contracts are, according to the contention of the appellant, to coexist, and the Government to be held bound upon both, and made to respond for the difference in the price of the work between the two contracts. This cannot be done upon any well recognized principle of law. If the appellant had any valid objection to the provision of the contract that it actually signed, it should have refused to sign it. But, "having made it and executed it, the mouth of the appellant is closed against any denial that it superseded all previous arrangements." *Parish* v. *United States*, 8 Wall., 489, 490.

2. The second question presented is equally conclusive as the first against the contention of the appellant, though upon broader grounds. The contract initiated under the first proposal by the appellant for the work was never completed, as required by the statute, and therefore was never binding upon the Government. Rev. Stat. United States, Sec. 3744, which embodies the act of Congress of June 2, 1862, Ch. 93, provides that:

"It shall be the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior to cause and require every contract made by them severally on behalf of the Government, or by their officers under them appointed to make such contracts, to be reduced to writing, and signed by the contracting parties with their names at the end thereof, a copy of which shall be filed by the officer making and signing the contract in the Returns Office of the Department of the Interior, as soon after the contract is made as possible, and within thirty days, together with all bids, offers and proposals to him made by persons to obtain the same, and with a copy of any advertisement he may have published inviting bids, offers or proposals for the same.

All the copies and papers in relation to each contract shall be attached together by a ribbon and seal, and marked by numbers in regular order according to the number of papers composing the whole return."

All contracts, of the class and character of the one alleged in this case, are required by the section of the statute just recited to be in writing and formally signed by the contracting parties; and in effect this provision of the statute prohibits and renders unlawful any other mode of making such contracts. *Clark* v. *United States*, 95 U. S., 539; *South Boston Iron Co.* v. *United States*, 118 U. S., 37, 42. The contract is not complete until reduced to written form and signed by the contracting parties, in the manner prescribed by the statute; and it is not within the power of the court, on mandamus, to declare that to be a completed and binding contract, which the statute declares in effect shall not be so without certain formalities. These formalities are intended for the protection of the Government, and to preclude all contentions as to what shall be regarded as valid contracts to bind the Government. But all the beneficial uses and protection afforded by the statute would be nullified, if the courts were to assume the right or power to compel the agents of the Government to give form and effect to alleged contracts, notwithstanding the mandatory effect of the statute upon the validity of the contract, and the opposition of the Government's agents. In this case, no written agreement, such as that contemplated by the statute, was signed and executed by either of the parties. The local engineer, and the chief of engineers, it is true, both appear to have approved of the proposal of the appellant, and to have accepted the proposals so far as they were competent, and the appellant was notified of the fact. But the ultimate decision of the matter rested with the Secretary of War. Indeed, this application against the Secretary alone, concedes his authority to be paramount, and nothing that was done, either by the local engineer in New York, or the engineer-in-chief in Washington, concluded

the action of the Secretary of War.   It was the duty of the latter to review the whole ground, and if he saw reason, before the formal contract, according to the statute, was completed, for the rejection of the proposal of the appellant, to reject it, and refuse to complete the contract. *United States* v. *Adams*, 7 Wall., 463.   And in doing this he was in the exercise of judgment and discretion that cannot be controlled by the mandate of the courts.

It is certainly the well settled principle of the decisions of the Supreme Court of the United States, that the writ of mandamus may issue where the duty, which the court is asked to enforce, is plainly ministerial, and the right of the party applying for it is clear, and he is without any other adequate remedy.   But it is settled doctrine that the writ will not issue in a case where its effect is to direct or control the head of an executive department in the discharge of an executive duty, involving the exercise of judgment or discretion.   This principle runs through all the cases in the Supreme Court, from *Kendall* v. *United States*, 12 Pet., 524, and *Decatur* v. *Paulding*, 14 Pet., 497, to the recent case of *Redfield* v. *Windom*, 137 U. S., 636, 644.

In the case of *United States* v. *Black*, 128 U. S., 40, it was said by the Supreme Court, speaking through the late Mr. Justice Bradley, " The court will not interfere by mandamus with the executive officers of the Government in the exercise of their ordinary official duties, *even where those duties require an interpretation of the law*, the court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them, that is, a service which they are bound to perform without further question, then, if they refuse, a mandamus may be issued to compel them."

The cases upon this subject have been recently reviewed and the principle clearly stated, in the case of *Noble* v. *The Logging R. Co.*, 147 U. S., 165, 171.*

---

\* S. C., 20 D. C., 555.

It would seem to be too clear for question, that to examine and determine the question, whether the proposal of the appellant was sufficient, and conformed to all the specifications and conditions under which it was made for doing the work, did, of necessity, require the exercise of judgment and discretion. It was certainly more than the performance of a mere ministerial duty. Indeed, the very object of investing the Secretary of War with power of directing the making and of approving these contracts was that he should exercise judgment and discretion in the matter for the protection of the Government. And, upon the assumption that there was the exercise of judgment or discretion in the *final* rejection of the proposal of the appellant, the question, whether the successor of the then Secretary of War would have the power to reverse that final determination of his predecessor, and direct the execution of the contract alleged, might be one of doubtful determination. The question arose and was discussed in some of its bearings, in the case of *Noble* v. *The Logging R. Co., supra ;* but we are not required to discuss or decide the question here.

It has been urged on the part of the appellant, that the Sec. 3744 of the Revised Statutes of the United States, has been modified by the subsequent legislation of Congress, as shown by the act of March 3, 1883, and the act of August 11, 1888, to the extent of dispensing with the formal execution of the contract as a prerequisite to its legality or binding effect, after accepting the proposal for doing the work or performing the service advertised. But we do not so read the provisions in the statutes referred to. They confer on the Secretary of War the powers of regulation and of prescribing forms for letting the work, but there is nothing that dispenses with the requirement that the contract shall be reduced to writing and signed by the parties thereto in accordance with the provision of the Sec. 3744 R. S. There is nothing in these later statutes that essentially conflicts with the former provision, and they stand well together.

3. Lastly, the third question presented must also be re-

solved against the contention of the appellant. As we have seen, in the instructions and specifications for the work, it was declared that any conditions, limitations or provisos attached to proposals would be liable to render them informal, and cause their rejection. And, by another article, right was reserved to the Government to reject any and all bids, and to waive any informality in the bids received. The proposal filed by the appellant departed from the terms of the specifications in respect ·to the time for doing the work. The specifications required the work to be commenced on or before October 1, 1892, and completed on or before December 31, 1893. Whereas, the proposal for doing the work was that ·the work should be commenced 90 days after the awarding of the contract, and the entire work to be completed on or before the 1st of June, 1894—thus extending the time for doing the work six months. Under the reserved right of rejection, the Secretary of War had the right and power to reject the proposal of the appellant; and nothing had been done by either the local engineer or engineer-in-chief that deprived him of that power. His authority was paramount.

It follows that the order of the court below denying the writ of mandamus and dismissing the petition must be affirmed.

*Order affirmed.*