**LITTON SYSTEMS, INC., LITTON COMPUTER SERVICES DIVISION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1335 C.**

United States Court of Federal Claims.

Dec. 11, 1992.

---

David V. Anthony, Pettit & Martin, Washington, DC, attorney of record for plaintiff. Gregory A. Smith, and Lee A. Fennell, Washington, DC, of counsel.

Joan M. Bernott, with whom were Asst. Atty. Gen. Stuart M. Gerson, and Director David M. Cohen, Dept. of Justice, Washington, DC, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

WIESE, Judge.

The plaintiff in this action, Litton Systems, Inc., is the named defendant in a civil suit brought under the False Claims Act, 31 U.S.C. §§ 3729–3733 (1988), that is currently pending before the United States District Court for the Central District of California.[1] That suit, which was initiated as a *qui tam* action by Taxpayers Against Fraud, a non-profit corporation, and James Carton, a former Litton employee, accuses Litton of improper ·accounting practices that resulted in multi-million dollar overcharges for computer services performed under government defense contracts. Prosecutorial direction of the *qui tam* action has been taken over by the Attorney General in accordance with the provisions of 31 U.S.C. § 3730(b)(2), (c).

In its suit before this court, Litton seeks to invoke our jurisdiction under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1988), to contest a contracting agency's decision to rescind agreements establishing contract cost rates, and to require Litton to exclude certain contract costs from post-January 1, 1991 invoices.

Defendant has moved for dismissal of this suit for lack of jurisdiction or, alternatively, for a stay of proceedings pending the outcome of the district court litigation. Plaintiff opposes defendant's motion and urges us to proceed with the suit, the pen-

---

**1.** *United States ex rel. Taxpayers Against Fraud v. Litton Systems, Inc.,* No. CV 88–2276 MRP (C.D.Calif. filed April 22, 1988).

dency of the district court action notwithstanding. The parties have been given the opportunity to support their positions both in writing and through oral argument. We now conclude that, although this court does have jurisdiction over the cause of action in suit, proceedings here should not go forward because the same matter is currently before the district court and can be expected to be finally resolved there. Accordingly, we grant defendant's motion to dismiss. The dismissal shall be without prejudice.

## I

The *qui tam* action brought against Litton in the district court alleges, in substance, that the Government was fraudulently overcharged for computer services the costs of which should have been borne instead by Litton's other trade customers. In the resolution of this issue the district court has thus far addressed two fundamental questions. First, whether Litton's mandatory Cost Accounting Standards Board disclosure statements accurately described its cost accounting practices; second, whether those accounting practices complied with applicable cost accounting standards.[2]

The district court has decided both questions against Litton. In separate Orders granting partial summary judgment in the Government's favor, entered on July 23, 1992, District Judge Mariana R. Pfaelzer ruled as follows: First, that during the period from October 1979 to July 15, 1988, Litton had violated disclosure requirements by using accounting practices different from its disclosed and established practices; second, that in fiscal year 1986, and thereafter, Litton had violated prescribed cost accounting standards. Specifically, in the latter Order, Judge Pfaelzer determined, *inter alia*, that:

4. In fiscal year 1986 and thereafter, Litton violated 48 C.F.R. §§ 31.201–4(b) and 31.203(b) by failing to allocate the costs of its LCS–WH [Litton Computer Services—Woodland Hills] facility to government defense divisions and [trade] customers in reasonable proportion to usage.

5. From and after January 1, 1986, Litton violated 48 C.F.R. §§ 31.201–1, 31–001 ... by allocating costs to and between customers at LCS–WH based on paper models of hypothetical in-house computer facilities and failing to adjust these cost allocations to reflect LCS–WH's actual cost experience.

*United States ex rel. Taxpayers Against Fraud v. Litton Systems, Inc.,* No. CV 88–2276 MRP at 2 (C.D.Calif. July 23, 1992) (Order Granting Partial Summary Judgment On Defendant's Violations Of The Cost Principles Of The Code of Federal Regulations).

Based on the district court's determination that Litton's accounting practices failed to comply with applicable government cost accounting standards, Litton was advised by the Defense Logistics Agency (through letters of August 13, 1992 from divisional administrative contracting officers)[3] that existing provisional billing rate agreements, covering costs accruing after January 1, 1991, were being rescinded. Litton was further informed that, until such time as it could satisfactorily demonstrate that all unallowable costs were being excluded from contract billings, progress payments would be calculated on the basis of rates determined by the Government. Finally, Litton was told that if an audit review should reveal that its accounting system either could not or did not adequately identify and segregate unallowable costs, then progress payments might be suspended altogether.

2. The principles which govern the allocation of costs under government defense contracts are referred to as the Cost Accounting Standards. These standards appear in the Federal Acquisition Regulations at 48 C.F.R. §§ 30.000–30.420 (1991); their use by all executive agencies and contractors is mandated by statute. 41 U.S.C. § 422(f)(2). The statute also requires contractors and subcontractors, as a condition to contracting with the United States, to "disclose in writing their cost accounting practices, including methods of distinguishing direct costs from indirect costs and the basis used for allocating indirect costs." *Id.* § 422(h)(1)(A).

3. There were four such letters affecting several corporate divisions.

To satisfy the concerns raised in the August 14th letters will require Litton to undertake a major restructuring of its cost accounting system. More immediately, however, the effect will be to deny Litton payment of over $7,000,000 in past and future billings for computer services. It is to avoid these adverse results that this suit was brought. What Litton seeks is a declaration from this court holding that its accounting practices are in conformance with applicable cost accounting standards.

## II

■ As its first line of defense, the Government has moved for dismissal of this suit for lack of jurisdiction. Dismissal is required, says the Government, because the contracting officer letters of August 14, 1992 are not final decisions and thus, under the terms of the Contract Disputes Act, may not be heard by this court.

As a matter of law, the Government is correct in saying that the exercise of our jurisdiction under the Contract Disputes Act requires an administratively final determination, *i.e.*, a contracting officer's final decision on a claim in issue. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 184, 645 F.2d 966, 971 (1981). That requirement remains in place even under the recent enlargement of our jurisdiction.[4]

■ However, the Government is not correct in saying that the August 14th letters are not final decisions on a Govern-

ment claim. True, they are not so labeled. But that fact, although important, cannot be dispositive. Whether a contracting officer's letter may be taken as a final expression of the agency's position on a claim in issue is ultimately to be judged by what the letter says and not by how it is labeled. The inquiry, therefore, must focus on the content of the writing, the circumstances that prompted the writing, and the conclusiveness of position the writing intends to convey.[5]

So evaluated, there can be no question that what we deal with here are final decisions. The reason is manifest—the contracting officers' letters adopt the district court's ruling respecting the non-conformance of Litton's accounting practices and they base immediately-effective payment redeterminations on those rulings. Thus, the letters reflect a Government position on a contract claim[6] that has gone beyond the talking point. The action directed is in place. For the contractor, therefore, relief from the adverse determination cannot be obtained through discussion at the administrative level. Rather, relief may only be found in court. Such a determination is clearly a "final decision" for purposes of the Contract Disputes Act.

■ Given then that we have jurisdiction, the question is whether its exercise in these circumstances would be appropriate. The answer is no. From a public interest standpoint, it makes no sense for this court to revisit issues which the district court has

---

4. The Federal Courts Administration Act of 1992 expanded the scope of the Tucker Act, the court's basic jurisdictional statute (28 U.S.C. § 1491 (1988)), to include nonmonetary disputes originating under the Contract Disputes Act. The amending language reads as follows:
   Section 1491(a)(2) of title 28, United States Code, is amended in the last sentence by inserting before the period at the end the following: ", including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act."
   Federal Courts Administration Act of 1992, Pub.L. No. 102–572 § 907, 106 Stat. 4506, 4519 (1992) (amending 28 U.S.C. § 1491(a)(2) (1988)).

5. The inquiry as to whether a contracting officer's determination may be taken as a final decision on a claim is not unlike the examination the court undertakes in instances where the question is whether a "claim" has been submitted to the contracting officer. The answer in both instances lies in the facts and the intent they demonstrate, not in "magic words." *See e.g., Transamerica Ins. Corp. v. United States*, 943 F.2d 1572, 1578 (Fed.Cir.1992); *Contract Cleaning Maintenance, Inc. v. United States*, 811 F.2d 586, 592 (Fed.Cir.1987).

6. The Federal Acquisition Regulations, 48 C.F.R. § 33.201, defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract."

already ruled on. Two trial court decisions on the same question, each engendering its own appeal through different appellate channels, would not contribute either to efficiency or certainty in the resolution of the parties' controversy. Ruling case law counsels that we not involve ourselves in this litigation. *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952); *Far West Fed. Bank v. Director, Office of Thrift Supervision*, 930 F.2d 883, 891 (Fed. Cir.1991).

Plaintiff insists that the district court went beyond its authority under the False Claims Act when, as a preliminary matter, it took up the question whether Litton's accounting practices conformed to required accounting standards. The resolution of this issue, argues plaintiff, properly lies within the province of this court under the Contract Disputes Act. Accordingly, plaintiff urges that we require the Government to honor the disputes mechanism provided for in the parties' contract by allowing this suit to proceed.

The court is not persuaded by this argument. Even if plaintiff's contention has merit—a point on which we need express no opinion—wise judicial administration still would counsel that we refrain from entertaining a lawsuit whose issues are integral to an action well underway in another forum.

Restraint is particularly appropriate in cases, such as this one, where the parallel litigation involves issues of fraud. The vindication of the public interest in insuring the integrity of federal contracts—the essence of the fraud action—demands the suspension of usual contract procedures in order to allow the resolution of the fraud issues to proceed uninterrupted. *See United States v. Adams*, 74 U.S. (7 Wall.) 463, 477–78, 19 L.Ed. 249 (1868) (suspected fraud in execution of military contracts justified suspension of contract payments pending investigation); *Litton Systems, Inc. v. United States*, 215 Ct.Cl. 1056 (1978) (suit to enforce payment of favorable contract board decision stayed to accommodate concurrent criminal False Claims Act litigation). We adhere to these precedents.

III

Although the court has jurisdiction over the cause of action alleged in the complaint, no interest is served by our exercise of that jurisdiction given the pendency of the same issues in the district court. Therefore, we dismiss without prejudice.