**NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–183C.

United States Court of Federal Claims.

Aug. 18, 1999.

---

John G. DeGooyer, Hopkins & Sutter, Washington, D.C., for plaintiff. Philip A. Nacke, Steven C. Lambert, and Rachel Danish Campbell, were of counsel.

Russell A. Shultis, Trial Attorney, with whom was Sharon Y. Eubanks, Deputy Director, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, and Frank W. Hunger, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant. Rober E. Lieblich, Arlington, VA, was of counsel.

## OPINION

SMITH, Chief Judge.

This matter is before the court on defendant's Motion to Dismiss. The issues to be decided are whether the government's contracting officer has issued a final decision as to plaintiff's noncompliance with Cost Accounting Standard (CAS) 415, 48 C.F.R. § 9904.415, and whether there is a claim over which this court has jurisdiction. Plaintiff seeks a judgment that the contracting officer's determination of noncompliance is erroneous, a denial of the government's determination of noncompliance, or else a judgment that the government released plaintiff of liability for noncompliance, as well as attorneys' fees and costs. Defendant argues that plaintiff's complaint should be dismissed for lack of jurisdiction because there was no final decision and there is no claim in dispute.

## FACTS

Plaintiff, Newport News Shipbuilding and Dry Dock Company, supplies aircraft carriers, submarines, and other vessels to the United States Navy. Plaintiff is a former subsidiary of Tenneco Inc. (Tenneco), whose Internal Revenue Code 401(k) qualified savings plan (Thrift Plan) was later adopted by plaintiff. In 1996, the Defense Contract Audit Agency (DCAA) audited Tenneco to evaluate Thrift Plan contributions, made by Tenneco and allocated to plaintiff, from 1993–1994.

On October 9, 1996, the DCAA Resident Auditor sent a draft copy of a Statement of Condition and Recommendations based on

the DCAA audit of plaintiff and requested comments. This letter was also sent to the Administrative Contracting Officer (ACO). The letter determined that Newport News was "in noncompliance with CAS 415.50(e)(1) which requires an award be made in the stock of the contractor to be based on the market value of the stock on the measurement date, i.e., the first date the number of shares awarded is known." *See* Comp. ¶ 26. Plaintiff objected to the letter's findings on the theory that CAS 415 was inapplicable because CAS 412 applied, and that plaintiff had complied with CAS 415.

On February 6, 1997, DCAA issued a final audit which rejected plaintiff's arguments and reaffirmed the finding of noncompliance. On February 26, 1997, the ACO issued an Initial Finding of Noncompliance With CAS 415, which adopted the DCAA conclusions. The Initial Finding requested comments from plaintiff on why it was compliant. On April 23, 1997, plaintiff responded by letter, restating its previous arguments. On November 5, 1997, the ACO issued a Determination of Noncompliance With CAS 415.

Plaintiff's Navy contracts contain a "Notification of Changes" clause which call for a bilateral contract modification whereby the parties agree "to the mutual full and final releases for the consequences of their conduct" other than conduct specifically excepted from the release. *See* Compl. ¶ 32. The contracts also contain a clause requiring CAS compliance and requiring plaintiff to agree to an adjustment of the contract price or cost allowance for failure to comply.

On March 17, 1998, plaintiff filed its complaint in this court, claiming the ACO determination of noncompliance was erroneous in fact and law because CAS 412 applied (Count I), the determination was erroneous because plaintiff had actually complied with CAS 415 (Count II), and the determination is a nullity because bilateral contract modifications executed through the third quarter of 1997 released plaintiff from liability (Count III). On July 17, 1998, defendant submitted its Motion to Dismiss, arguing that the ACO had not issued a final decision, and that plaintiff did not submit a claim to the ACO.

## DISCUSSION

### I. JURISDICTION

#### A. *Whether the ACO Made a Final Decision*

■ This court's jurisdiction, as expanded by the 1992 amendments to the Tucker Act, includes:

> any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, including a dispute concerning... compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

28 U.S.C. § 1491(a)(2). Plaintiff seeks nonmonetary relief under the Contract Disputes Act of 1978(CDA), 41 U.S.C. § 601 *et seq.*, which permits a contractor to file suit after the contracting officer has made a final decision. *See* 41 U.S.C. § 609(a)(3). A final decision by the contracting officer is a jurisdictional prerequisite to bringing suit in this court pursuant to the CDA. *See Bath Iron Works Corp. v. United States*, 20 F.3d 1567, 1578 (Fed.Cir.1994).

■ Defendant argues no final decision was made because the November 5, 1997 letter was an invitation to negotiate. In support of this view, defendant notes the letter was not designated a "final decision", and that regulations require the contracting officer to solicit a cost impact assessment for purposes of negotiating a price adjustment. *See* Def. Reply Br. at 7 (citing 48 C.F.R. § 30.602–2(c)(2)). However, "[w]hether a contracting officer's letter may be taken as a final expression of the agency's position on a claim in issue is ultimately to be judged by what the letter says and not by how it is labeled." *Litton Systems, Inc. v. United States*, 27 Fed.Cl. 306, 309 (1992). "A letter can be a final decision under the CDA even if it lacks the standard language announcing that it constitutes a final decision." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1267 (Fed.Cir.1999). Plaintiff contends that the letter was conclusive as to liability because it was a final determination of noncompliance. According to plaintiff, the letter

only required plaintiff to perform "ministerial tasks". *See* Pl. Br. at 11. These tasks were: requesting any accounting change necessary to correct noncompliance, requesting submission of the cost impact of the noncompliance, and determining whether to withhold from progress payments under the contracts if plaintiff did not submit the accounting change or cost impact.

In the Armed Services Board of Contract Appeals (ASBCA), a final determination of CAS noncompliance has been held to be an appealable final decision of the contracting officer, even absent a determination of monetary impact. *See Systron Donner, Inertial Division*, ASBCA No. 31148, 87–3 B.C.A. (CCH) ¶ 20,066, 1987 WL 41178; *see also Airesearch Manufacturing Co.*, ASBCA No. 20998, 76–2 B.C.A. (CCH) ¶ 12150, 1976 WL 2047, *aff'd on reconsideration*, ASBCA No. 20998, 77–1 BCA (CCH) ¶ 12,546, 1977 WL 2201. The question is whether the CDA, in light of our precedent, requires this court to adopt the same jurisdictional understanding as that held by the ASBCA.

As argued, this case appears to create a tension between two purposes of the 1992 Tucker Act Amendments. First, the Court of Federal Claims should have parallel jurisdiction with the boards of contract appeals. *See Garrett v. General Electric Co.*, 987 F.2d 747, 749–50 (Fed.Cir.1993) ("The CDA has as one of its purposes the elimination of differences in the jurisdictions of the forums which decide Government contract disputes."). Second, the role of this court should not include micromanagement of the details of contract negotiation and execution. For example, disagreement over where a parcel of steel should be placed in a warehouse would not be suitable for this court's jurisdiction. As Senator Heflin explained the 1992 Amendments:

> The Amendment does not authorize contractors to seek declaratory judgments from the Court of Federal Claims in advance of a dispute and final decision, and will not permit contractors to seek injunctions or declaratory judgments that would interfere with the contracting officers' right to direct the manner of performance under the changes clause. A contracting

officer's final decision under the Contract Disputes Act will remain a jurisdictional prerequisite to review by the Court of Federal Claims.

138 Cong. Rec. S17,799 (daily ed. Oct. 8, 1992).

In fact, the ASBCA precedent may be squared with the finality requirement. The Federal Circuit recently rejected a broad reading of Senator Heflin's remarks which would have precluded nonmonetary relief prior to completion of a contractor's work under a disputes clause. *See Alliant*, 178 F.3d 1260, 1268–70. The court was concerned that such a limitation of nonmonetary relief where there was a final decision would not comport with Congress' concern for "jurisdictional parity" between the boards of contract appeals and this court. *See id.* The choice of forum should not become a choice of law. This court has held that a letter of noncompliance with cost accounting standards may trigger jurisdiction where its content and effect is final. In *Litton Systems*, the court found a letter to be a final decision, despite the absence of "magic words". As the court explained, "[t]he inquiry... must focus on the content of the writing, the circumstances that prompted the writing, and the conclusiveness of position the writing intends to convey." 27 Fed.Cl. at 309; *see also Alliant*, 178 F.3d 1260, 1268 ("The government cannot, in response to a proper claim, demand that a contractor obey the contracting officer's directive without further discussion while characterizing that directive as nonfinal."); *Placeway Construction Corp. v. United States*, 920 F.2d 903, 907 (1990) ("The decision is no less final because it failed to include boilerplate language usually present for the protection of the contractor."). Defendant urges the court to distinguish *Litton Systems* because the *Litton Systems* court based its ruling on the fact that the letter in that case required "immediately effective payment redeterminations." *See id.* However, at oral argument, plaintiff noted the effect of the governments' letter in this case was immediate. The court agrees. As a result of the CAS clause in the covered contracts, plaintiff would have to change its accounting practices for all of its future con-

tracts that have that clause. *See* Trans. at 14–15.

The imminent certainty of harm to plaintiff in this case also distinguishes *Sharman v. United States*, 2 F.3d 1564 (Fed.Cir.1993), *on remand*, 30 Fed.Cl. 231 (1994), *overruled on other grounds, Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579 n. 10 (Fed.Cir.1995), which held that a letter which included a request that the contractor submit a proposal for deferment of collection was not a final decision. In the present case, there is no clause in the letter to suggest a possibility that liability for noncompliance may be deferred, or that plaintiff should once again provide its reasons why it thought it was in compliance. There is thus nothing to suggest the ACO in this case had not reached a final determination of noncompliance.[1]

Based on the circumstances and content of the November 5, 1997 letter, the court agrees with plaintiff. The letter's requests for information may affect the amount of withholding, but they would not change the ACO's final determination that plaintiff was in noncompliance—that decision was no longer being negotiated. The government's argument that the letter is not a final decision because it merely references the ACO's reasoning why CAS 415 and not CAS 412 applied, ignores the fact that the letter was a determination of noncompliance made *after* an Initial Finding of Noncompliance. The ACO had already made its request for reasons why plaintiff believed it was in compliance, and then made its determination, which referred back to its Initial Finding and plaintiff's response, as well as the CAS contract term at issue.[2] Although the costs of the change, or the specific contracts covered, were not specified, the ACO had made clear both when and why its determination would affect plaintiff's contracts. Failure by the ACO to explain the nature of the disagree-

ment with plaintiff, or to include the "magic words" of a "final decision", does not change the clear circumstances and content of the determination. "For the contractor... relief from the adverse determination cannot be obtained through discussion at the administrative level. Rather, relief may only be found in court." *Litton Systems*, 27 Fed.Cl. at 309.

**B.** *Whether a Claim Exists*

■ This court's jurisdiction pursuant to the CDA requires a valid government or contractor "claim". *See* 41 U.S.C. § 605(a). As the Federal Circuit has explained, the term "claim" is not specifically defined in the CDA, and therefore it is necessary to refer to the Federal Acquisition Regulations (FAR). *See Garrett*, 987 F.2d 747, 749. A claim is defined therein as "a written demand or assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 33.201.

Plaintiff argues the November 5, 1997 letter constitutes a government claim, not a contractor claim. For support, plaintiff looks to *Brunswick Corp.*, ASBCA No. 26691, 83–2 B.C.A. (CCH) ¶ 16,794, 1983 WL 13218, *Litton Systems*, 27 Fed.Cl. at 309, and *Litton Systems, Inc., Guidance and Control System Division*, ASBCA No. 37131, 94–2 B.C.A. (CCH) ¶ 26,731, at 133,016, 1994 WL 65121. In *Brunswick*, for example, the ASBCA held that a final determination of noncompliance with CAS 410 was a government claim. *See Brunswick*, ASBCA No. 26691, 1983 WL 13218, at 83,483 ("This appeal stems from a final determination that appellant was in noncompliance with the requirements of Cost Accounting Standard (CAS) 410. If this de-

---

1. In this regard, it is worth mention that the government also argued the letter was not final because it did not state whether or not the United States would waive the right to require CAS compliance. This theory amounts to saying the government's letter is not final if it does not guarantee that it is final. In effect, such an argument is nothing more than a requirement of "magic words", which are not required by our precedent.

2. As a result of the letter's reference to "contracts containing a CAS clause", *see* Pl. Resp., App. at 33, the ACO did reference the pertinent contracts, *see* 48 C.F.R. § 33.211(a), contrary to the government's contention. The court finds the only reasonable reading of the letter covers the plaintiff's contracts containing CAS clauses.

618

termination stands, appellant must pay an unspecified sum to the Government. The claim is therefore that of the Government's to recoup funds paid to appellant."). And this court held in *Litton Systems* that where government letters informed plaintiff that, until it could demonstrate all unallowable costs were excluded from contract billings progress payments would be calculated by rates determined by the government, constituted a government claim. *See Litton Systems*, 27 Fed.Cl. at 308–09.

The government contends that plaintiff's argument fails because plaintiff's choice not to provide the information requested in the letter prevented the ACO from making a specific demand for relief. The government cites *Garrett v. General Electric* for this proposition. In *Garrett*, the Federal Circuit held that a Navy directive that General Electric correct or replace defective engines under its contract constituted the "other relief" referred to above in the FAR definition of a "claim". *See Garrett*, 987 F.2d 747, 749. In this case, the alleged "claim" would involve a requirement that plaintiff pay the costs of noncompliance with CAS 415, and change its accounting practices to comply with the ACO's understanding of CAS 415. Without question, the government did not request a "sum certain" as to the costs. But that does not mean the government did not make a specific demand for relief. The ACO's letter asking for "the total impact cost" of the change in accounting on plaintiff's contracts would not make sense if a noncompliance letter did not require plaintiff to change its accounting to meet the ACO's compliance determination. The court finds, weighing the evidence of the DCAA audit, the Initial Finding, and the November 5, 1997 letter, that the government had made a final decision which demanded plaintiff change its accounting for all of its CAS contracts to meet the determination of the ACO that plaintiff was CAS 415 noncompliant. This demand constitutes a government "claim"—even if plaintiff were assessed zero costs for its alleged failure to meet CAS 415 in the past, it would have to change its accounting for all of its contracts based on the November 5, 1997 letter.

A government claim does not require certification. *See Placeway Construction Corp.*, 920 F.2d at 907 ("As a final decision on a government claim, the Claims Court has jurisdiction, even though the claim was not certified."); *see also Brunswick*, ASBCA No. 26691, at 83,483, 1983 WL 13218 ("Being a claim of the government's, certification is not required."). While the court would share the government's concerns about the procedures plaintiff followed if this case involved a claim by plaintiff, these issues are not raised by the government claim in this case. Outside of its argument that the November 5, 1997 letter was not a final decision, and that it was not a government claim, the government has not provided this court with any independent reason to dismiss the case. Inasmuch as the government made a final decision on a government claim, plaintiff has a right to seek declaratory relief in this court, including the contractual defense of Count III. As a result, plaintiff is not inappropriately seeking to avoid administrative remedies, or seeking to avoid an obligation to negotiate, because it has been given the option to file suit in this court under the Tucker Act and CDA.

### CONCLUSION

The Court holds that the ACO's letter of November 5, 1997 was a final decision which constituted a government claim. Accordingly, defendant's Motion to Dismiss is denied as to all Counts.

It is so ORDERED.