ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeals of --                                         )
                                                      )
Lockheed Martin Aeronautics Company                   )        ASBCA Nos. 62505, 62506
                                                      )
Under Contract Nos.  FA8615-16-C-6048                 )
                     FA8615-17-C-6045                 )

APPEARANCES FOR THE APPELLANT:            Stephen J. McBrady, Esq.
                                          Skye Mathieson, Esq.
                                          Michelle D. Coleman, Esq.
                                          John Nakoneczny, Esq.
                                            Crowell & Morning LLP
                                            Washington, DC

APPEARANCES FOR THE GOVERNMENT:           Jeffrey P. Hildebrant, Esq.
                                            Air Force Chief Trial Attorney
                                          Caryl A. Potter, Esq.
                                          Christopher M. Judge-Hilborn, Esq.
                                            Trial Attorneys

## MAJORITY OPINION BY ADMINISTRATIVE JUDGE PROUTY

The question presented by these appeals is whether a unilateral contract definitization[1] action by a contracting officer (CO) constitutes a government claim that may be directly appealed to the Board by the contractor (as happened here), or whether it is an act of contract administration, subject to a claim by the contractor, but not a direct appeal.  It turns out, we answered this question 33 years ago in *Bell Helicopter Textron*, ASBCA No. 35950, 88-2 BCA ¶ 20,656, *aff'd on mot. for recon.*, 88-3 BCA ¶ 21,048.  In that case, we held that such a unilateral contract definitization is not a government claim and that, to obtain relief, the contractor must first file a claim with the CO and then appeal to us if it is dissatisfied with the results.  Appellant here, Lockheed Martin Aeronautics Company (LM), is well aware of *Bell Helicopter*, but appealed the unilateral definitization directly to us anyway, arguing that *Bell Helicopter* has been effectively, if not expressly, overruled in the years since its issue.  Judge Clarke, in dissent, agrees with LM.

Though we certainly agree that the definition of "claim" and the universe of actions subject to a claim has grown more liberal since the issuance of *Bell Helicopter*,

---

[1] Contract definitization is the setting of a final price for a contract that was awarded without a set price.

*see, e.g., Todd Constr. v. United States*, 656 F.3d 1306, 1311-12 (Fed. Cir. 2011), we respectfully disagree with Judge Clarke's conclusion that it has changed so much as to effectively overrule that decision. That being the case, we must follow our prior precedent, *see SWR, Inc.*, ASBCA No. 56708, 15-1 BCA ¶ 35,832 at 175,220, and continue to hold that a unilateral contract definitization does not constitute a government claim and may not be directly appealed to us. The government motion to dismiss on these grounds is granted.

<u>STATEMENT OF FACTS FOR THE PURPOSES OF THE MOTION</u>

Strictly speaking, the motion before us is a motion to dismiss for lack of jurisdiction. The government submitted with its motion a statement of undisputed material facts, in the style of a motion for summary judgment. Those proposed facts – at least those which we find material to our decision today – may be gleaned almost completely from LM's complaint in this action.[2] The salient ones are below.

These appeals involve two contracts in which the Air Force contracted with LM to upgrade F-16 fighter aircraft on behalf of two different foreign governments pursuant to the Foreign Military Sales program. Contract No. FA8615-16-C-6048 (the Singapore contract) was entered in December 2015 and was for the purpose of upgrading the avionics of F-16s owned by Singapore. Contract No. FA8615-17-C-6045 (the Korea contract) was entered into in November 2016. (*See* compl. ¶¶ 1-2).

Each contract was an undefinitized contract action (UCA), meaning that the contract was awarded before the final price was set (*see* compl. ¶ 2). In each case, LM was entitled to charge the government for the costs that it incurred as it performed the contract until it was definitized (*see* compl. ¶ 3). Each contract also included a "not to exceed" (NTE) amount, which limited the costs that LM could incur before the contract price was definitized (*see* compl. ¶ 17 (Singapore contract); ¶ 19 (Korea contract)).

The contract provisions governing definitization came from different sources for each contract, though they were identical for our purposes. The relevant provision for the Singapore contract came from the Federal Acquisition Regulation (FAR) 52.216-25(c); the provision for the Korea contract came from the Department of Defense Supplement to the Federal Acquisition Regulation (DFARS) 252.217-7027(c). (*See* compl. ¶ 5). Each

---

[2] In a motion to dismiss for lack of jurisdiction, well-pleaded facts in the complaint are generally treated as true unless controverted. *See, e.g., Reynolds v. Army and Air Force Exch. Svs.*, 846 F.2d 746, 747 (Fed. Cir. 1988).

provided that, in the event the parties were unable to come to agreement upon the definitized price within the time set by the contract:

> the Contracting Officer may, with the approval of the head of the contracting activity, determine a reasonable price or fee in accordance with subpart 15.4 and part 31 of the FAR, subject to Contractor appeal as provided in the Disputes clause. In any event, the Contractor shall proceed with completion of the contract, subject only to the Limitation of Government Liability clause.

*See* compl. ¶ 10 (citing FAR 52.216-25(c); DFARS 252.217-7027(c)).

And, speaking of the Disputes clause, each contract included the same Disputes clause, FAR 52.233-1, DISPUTES (MAY 2014) ALTERNATE I (DEC 1991)) (*see* compl. ¶ 11; R4, tab 1 at 47 (Singapore contract); R4, tab 7 at 42 (Korea contract)).

LM submitted proposals for definitization of the contracts in a timely manner and included cost data to support its proposals (*see* compl. ¶¶ 20-43 (Singapore contract); ¶¶ 47-65 (Korea contract)). Nevertheless, after a period of several years, the parties were unable to come to agreement upon the contract prices and, on February 12, 2020, the CO issued contract modifications to unilaterally set the price for each contract. In the case of the Singapore contract, Modification No. PZ0010 unilaterally definitized the total project price at $1,008,584,243 (*see* comp. ¶ 44). In the case of the Korea contract, Modification No. PZ0012 unilaterally definitized the total project price at $970,462,643 (*see* compl. ¶ 66).

LM did not file a claim with the CO challenging these definitization actions. Instead, on May 8, 2020, LM filed Notices of Appeal of each definitization action with the ASBCA, stating that it was appealing directly from the government's two unilateral modifications. (*See* compl. ¶ 12). At the time of its submission of the appeals, LM asserts, both contracts had over a year of performance remaining and in neither contract had LM's costs exceeded the unilaterally definititzed price set by the CO (*see* compl. ¶ 9).

The appeals have since been consolidated.

DECISION

I. *Bell Helicopter* is Dispositive (if it Remains Good Law)

As noted above, the government has moved to dismiss these appeals upon the ground that LM has not filed claims with the CO challenging the two definitization actions at issue. Without a decision upon claims to appeal, of course, there is no

3

jurisdiction under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. *Islands Mechanical Contractor, Inc.*, ASBCA No. 59655, 17-1 BCA ¶ 36,721 at 178,809.

LM recognizes the need for a CO final decision for Board jurisdiction, but argues that it has that in the CO's definitization decision, which LM asserts is a government claim against the contractor which may be directly appealed (*see* app. opp'n at 15-16 (citing *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 749-50 (Fed. Cir. 1993))). Unfortunately for LM, that argument was rejected by the Board in *Bell Helicopter*, where we held that a "contracting officer's decision [that] did no more than establish the contract price in accordance with [the terms of the contract] did not amount to a government claim." 88-2 BCA ¶ 20,656 at 104,392. The CO's decisions challenged here, likewise, established the contract price in accordance with the contracts' terms, and are thus not government claims – so long as *Bell Helicopter* remains binding.

## II. *Bell Helicopter* Remains Good Law

As will be discussed herein, LM's challenges to *Bell Helicopter* come in two primary categories. The first is that the judicial expansion of the meaning of "other relief" as a category of claim under the CDA, which happened subsequent to the *Bell Helicopter* decision, now embraces definitization, making it a claim.[3] The second category of challenge to *Bell Helicopter* is premised upon the notion that it was decided incorrectly in the first place. Neither category of challenge is persuasive in the context we are operating under here: our decision today is not based upon what we would do if we were working on a blank slate and the Board had not issued *Bell Helicopter*; instead our decision – and the analysis which we must undertake in addressing LM's arguments – is premised upon *Bell Helicopter* being the law, which we do not have the power to overrule.[4] Our

---

[3] LM also argues that *Bell Helicopter* did not address whether definitization constituted "other relief", thus, technically, making it unnecessary for us to actually overrule that decision (app. sur-reply at 4-8). Contrary to LM's argument, *Bell Helicopter* addressed whether the government seeks other relief when it definitizes prices by expressly holding that the government did not seek any "recourse" when it definitized prices. 88-2 BCA ¶ 20,656 at 104,392. In any event, we find that LM's argument cuts things too finely: the *Bell Helicopter* decision considered whether a unilateral definitization was a government claim and found that it was not; the "other relief" text was, of course, part of the CDA at the time and we presume our predecessors were familiar with it, even if they did not explicitly cite it. In any event, in dealing with the argument that the law on "other relief" expanded post-*Bell Helicopter*, we largely deal with LM's argument that the *Bell Helicopter* panel ignored "other relief."

[4] To be clear, we do not mean to imply that, without *Bell Helicopter*, we would necessarily rule in LM's favor or that we disagree with the outcome of that case. We do not reach those questions because, if *Bell Helicopter* remains the law (as

authority to disregard the holding of *Bell Helicopter* can only rest on its being directly overruled by a body with the authority to do so, such as the Board's own Senior Deciding Group (SDG) [5] or the Federal Circuit, or its foundational underpinnings having been so changed as to effectively overrule it. *See Lighting Control Ballast, LLC v. Phillips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1282 (Fed. Cir. 2014), *vacated on other grounds sub nom. Lighting Control Ballast, LLC v. Universal Lighting Tech., Inc.*, 574 U.S. 1133 (2015); *cf. Patterson v. McLean Credit Union*, 491 U.S. 164, 173 (1989).[6]

A.  The Ascendance of "Other Relief" Does Not Sufficiently Change the Basis of *Bell Helicopter* to Overrule it.

The decision that LM and Judge Clarke's dissent argue is most salient to this appeal is the Board's SDG decision in *Gen. Elec. Co.*, ASBCA Nos. 36005, 38152, 91-2 BCA ¶ 23,958, which was affirmed by the Federal Circuit in *Garrett*, *supra* (*see* app. opp'n at 23-24). *General Electric* involved the CO's direction to appellant to repair a number of non-complying jet engines produced under the contract. Since the government's demand was nonmonetary, it had been argued that prior Board decisions requiring a monetary aspect to a CO's directive to make it a government claim – *H.B. Zachry Co.*, ASBCA No. 39202, 90–1 BCA ¶ 22,342, was the primary example – precluded that direction from being a government claim. *See Gen. Elec.*, 91-2 BCA ¶ 23,958 at 119,945-46. The SDG decision overruled any such decisions, recognizing that "other relief" under the FAR's definition of "claim" embraced the CO's directive to repair the engines and that any notion of limiting government claims to ones specifically seeking money was wrong. *Id*. at 119,946. The Federal Circuit's opinion essentially agreed with this, holding that the government's direction to the contractor was a government claim despite its choice to pursue a nonmonetary remedy. *See Garrett*, 987 F.2d at 749.

None of this directly addresses *Bell Helicopter*, about which the SDG was conspicuously silent, despite its explicitly overruling of *Zachry*. *See Gen. Elec.*, 91-2 BCA ¶ 23,958 at 119,946. To be sure, *Bell Helicopter* was mentioned in one of the three dissenting opinions in which it was included in a string cite for the proposition that directions by contracting officers to perform additional work were not considered to be

---

we find that it is), there is no more reason to second guess it than any other binding precedent.

[5] The SDG is the way that the Board overturns its past precedents. *See SWR*, 15-1 BCA ¶ 35,832 at 175,220. It may be considered the equivalent of an *en banc* decision, but it does not involve every member of the Board, just the most senior.

[6] In footnote four of its sur-reply, LM cites four prior opinions of ours in support of its assertion that we have routinely "jettisoned" our past precedent when the Federal Circuit has "signal[led] a new jurisdictional trajectory" (app. sur-reply at 6, n.4). That particular test is not to be found in any of our opinions. A change in foundational underpinnings, the proper test, is different than a vague "signal."

claims.  *See Gen. Elec.*, 91-2 BCA ¶ 23,958 at 119,947 (Spector, J., dissenting).  But, with due respect to that dissenting opinion, that alleged holding of *Bell Helicopter*'s is not, in fact, an accurate representation of its actual holding, for the unilateral contract definitization in *Bell Helicopter* entailed no requirement for *additional* work, and nothing in *Bell Helicopter* is premised upon the notion that only monetary claims can be government claims.

Judge Clarke argues that concerns expressed by the dissenters in *General Electric* – that finding a government claim in those circumstances would unduly intrude into contract administration – show that those concerns are now relegated to dissents.  In other words, they have been rejected by the winning side of that decision and the same rejection should apply to *Bell Helicopter*, which is (supposedly) premised upon similarly misplaced views of keeping the Board's hands out of contract administration.  But not everything said in a dissent is necessarily wrong.  Judge Williams' concurring opinion in *General Electric* shared the dissenters' "legitimate concern that the Board not become embroiled in matters that are primarily contract administration."  *Gen. Elec.*, 91-2 BCA ¶ 23,958 at 119,947.  He, nevertheless, found that the circumstances in *General Electric* did not go too far into such administration.  *Id*.  Indeed, the Federal Circuit's opinion in *Garrett* recognized the problematic aspects of judicial intrusion into contract administration, but, like Judge Williams (with whom it agreed), found them to be inapplicable to the circumstances presented in that appeal, given, *inter alia*, that contract performance was already complete at the time the government revoked its acceptance of the jet engines and required the contractor to fix them.  *Garrett*, 987 F.2d at 751-52.

Hence, in and of themselves, neither *General Electric* nor *Garrett* overruled *Bell Helicopter*, either explicitly or implicitly.  Moreover, they did not appreciably change the legal terrain regarding "other relief" as a basis for government claims.  As the SDG opinion in *General Electric* noted, the Board had ample past precedent prior to that case (and *Bell Helicopter*) in which the Board found the government's availing itself of other relief constituted a claim.  *Gen. Elec.*, 91-2 BCA ¶ 23,958 at 119,944-45 (citing cases).

LM argues that the Federal Circuit's more recent decision in *Todd Construction, supra*, further opened up the definition of claim so as to embrace a definitization action.  A more accurate reading of *Todd Construction* would be to say that it opened up the matters that could be subject to claims.  Importantly, *Todd Construction* did not hold that the challenged performance evaluations[7] were, themselves, government claims; rather, it held that seeking relief from those evaluations was the proper subject of a claim.  *See Todd Constr.*, 656 F.3d. at 1313-14.  This, we think, is key:  it is not that every written action in the course of a contract that a party considers to be adverse to it is a claim;

---

[7] The issue in *Todd Construction* was whether the CDA permitted a contractor to file a claim challenging contractor performance reports.  The Federal Circuit decided that it did.  *See* 656 F.3d. at 1313-14.

6

instead, it is the seeking of relief from those actions that is the claim. The Federal Circuit in *Todd Construction* never concluded that the performance evaluations were, themselves, government claims. *Id.*

And it is a very good thing for the private contracting community that *Todd Construction* did not do so: if an adverse performance evaluation were, in fact, a government claim, then a contractor would be subject to the CDA's statute of limitations to appeal it to the Board or the Court of Federal Claims. *See* 41 U.S.C. § 7104. Does *Todd Construction* really mean that, in all acts of contract administration by the government that the contractor may later dispute, the contractor must immediately vault to the courthouse door prior to filing its own claim or risk losing its appeal rights? Under LM's reading of the case, it must.[8] But we think not. Instead, the CDA, sensibly, gives the contractor ample time to decide whether to file a claim in the first instance (6 years, *see* 41 U.S.C. § 7013(a)(4)), and a much shorter period of time after the claim is denied (90 days for appeals to the Board; a year for appeals to the Court of Federal Claims) to appeal the claim denial. 41 U.S.C. § 7104. To its credit, *Todd Construction* did not change this.

LM cites a number of other types of appeal which do not, in and of themselves, expand the definition of "claim" but that it argues are the "progeny" of *General Electric* and, by analogy, suggest the definitization here must be a claim (*see generally*, app. opp'n at 18-19; 25-42). To put it slightly differently, LM's argument is that, "if these other things are government claims, surely a contract definitization must be." We generally question whether argument by analogy is sufficiently direct to cause us to recognize that one of our precedential opinions had been since overturned by our reviewing court. But, in any event, the analogous cases cited by LM are all distinguishable from contract definitization or were taken into consideration by the Board when *Bell Helicopter* was issued, thus precluding their use as bases to set aside that case.

---

[8] Perhaps LM might argue here that, since performance evaluations and other such CO actions do not include appeal rights, they are not necessarily government claims unless the contractor wishes them to be. But such an argument would both be contrary to the position it is taking in this appeal, that a decision may be a government claim even if the appeal rights are left off (*see* app. opp'n at 47), and be mistaken. We have long held that CO final decisions with defective notification of appeal rights can, nevertheless, be considered valid and not toll the statute of limitations – in particular, when the contractor has not detrimentally relied on the defective notification. *See Mansoor Int'l Dev. Servs.*, ASBCA No. 58423, 14-1 BCA ¶ 35,742 at 174,926; *cf. Decker & Co v. West*, 76 F.3d 1573, 1579-80 (Fed. Cir. 1996). This law does not provide room for the contractor to pick and choose which CO's decisions were ripe for appeal and which it would prefer to let lie and perhaps later submit a claim upon.

The first set of "analogous" cases cited by LM are a number involving the use of the contract's inspection clause by the government to direct the contractor to do new work on the contract (*see* app. opp'n at 25-28). These cases are all similar to *General Electric* and present similar fact patterns. Inasmuch as we have already discussed *General Electric* above, and find that it does not change the viability of *Bell Helicopter*, we may dispose of these arguments out of hand: the cases cited all involved directing the contractor to incur additional costs of performance – that has not happened here.

LM next argues that cost accounting standard (CAS) non-compliance determinations, which are government claims, are similar to the definitization here (app. opp'n at 28-32). In support of this conclusion, LM relies principally on one of our opinions: *CACI Int'l, Inc.*, ASBCA No. 57559, 12-1 BCA ¶ 35,027, and a Court of Federal Claims opinion cited in *CACI*, *Newport News Shipbuilding & Dry Dock Co. v. United States*, 44 Fed. Cl. 613 (1999) (*see* app. opp'n at 28-30). Those cases stand for the (hardly novel) proposition that a CAS non-compliance determination, which imposes the cost of a new accounting system on the contractor, is a government claim. *See CACI*, 12-1 BCA ¶ 35,027; *Newport News*, 44 Fed. Cl. at 616-17. LM asserts that a unilateral cost definitization is like a non-compliance finding because it will "invariably forc[e] cost overruns down the road" (app. opp'n at 28).

That is quite some assertion. Especially given how foundational it is to LM's argument. Absent a claim *by the contractor*, we have no way of knowing whether the particular price definitization imposed by the government will force later cost overruns in a particular case, much less whether any and all unilateral definitizations would "invariably" cause such overruns.[9] In any event, it is safe to say that the reasoning in *CACI* did not overturn *Bell Helicopter* and that neither it, nor *Newport News*, a case in a court that is not binding upon us, could have overturned *Bell Helicopter* in any event.

We also note that *CACI* is not the first case of ours finding a CAS non-compliance finding to be a government claim. In 1983, five years before *Bell Helicopter*, we came to that very conclusion in *Brunswick Corp.*, ASBCA No. 26691, 83-2 BCA ¶ 16,794, obviating LM's suggestion that there was any change in law supporting setting aside *Bell Helicopter*.[10]

---

[9] LM asserts in its complaint that it is being wronged by tens of millions of dollars (*see* comp. ¶¶ 73, 80), but it does not argue that such figures may be found in the CO's definitization decision or that all unilateral priced definitizations will "invariably" cause cost overruns.

[10] *Newport News*, the Court of Federal Claims case cited by LM here, also relied upon one of the Board's pre-*Bell Helicopter* decisions for its holding that CAS non-compliance findings could constitute government claims. 44 Fed. Cl. at 616 (citing *Systron Donner, Inertial Div.*, ASBCA No. 31148, 87-3 BCA ¶ 20,066).

Equally meritless is LM's argument that cases holding terminations for default to be government claims necessarily overturned *Bell Helicopter* (*see* app. opp'n at 32-34). This holding was the law prior to *Bell Helicopter*, and was indeed discussed by the panel that considered *Bell Helicopter*, and dismissed by it. *See* 88-2 BCA ¶ 20,656 at 104,392. It is not a basis to argue that the law has changed since we issued the *Bell Helicopter* decision.

LM's penultimate argument by analogy is to compare the present circumstances to data rights claims, in which the government's ordering the removal of restrictive data rights markings (or its unilateral removal of such markings), which we have held constitutes a government claim (*see* app. opp'n at 34-38). First, as LM recognizes, such data rights issues were recognized as government claims even before *Bell Helicopter*, *see, Bell Helicopter Textron*,[11] ASBCA No. 21192, 85-3 BCA ¶ 18,415 (cited by app. opp'n at 37), and were cited immediately after it. *See Ford Aerospace & Comms. Corp.*, ASBCA No. 29088, 88-2 BCA ¶ 20,748 at 104,829 (cited by app. opp'n at 37). Indeed, two of the three judges who signed *Bell Helicopter* (Spector, J., and Ruberry, J.) also signed *Ford Aerospace*, so it is rather clear that the consideration of the data rights actions to be government claims is not a change to the law since *Bell Helicopter*, indicating that its time has passed. Moreover, the data rights cases are easily distinguishable from the definitization we are dealing with here: perhaps there had been no monetary impact by the government's arrogation of contractor-owned data rights, but they involved the taking of property from the contractor by the government – a wrong that was ripe for relief. The unilateral contract definitization, however, as the *Bell Helicopter* Board put it, sought nothing from the contractor and merely established the price as required by the contract. *See* 88-2 BCA ¶ 20,656 at 104,392. The two types of cases are consistent – and are certainly not so inconsistent as to compel the reversal of *Bell Helicopter*.

LM's final argument by analogy is that the government's unilateral establishment of indirect cost rates constitutes a government claim, which would mean that the government's unilaterally establishing the contract's price should also be a government claim (app. opp'n at 38-42). In some ways, this is LM's strongest argument because there are commonalities in the circumstances – namely that the government is setting a price for a portion of contract performance that is different than what the contractor requested. But there are reasons that it is not dispositive.

First, LM's brief rests largely on an interpretation of our decision in *Fiber Materials, Inc.*, ASBCA No. 53616, 07-1 BCA ¶ 33,563, which, LM argues, demonstrates that unilateral indirect cost rate determinations by the CO may be directly

---

[11]This is not to be confused with the appeal which is central to our opinion today, though it does bear the same name.

appealed as non-monetary claims[12] (*see* app. opp'n at 38-41).  But *Fiber Materials* (issued in 2007) did not see itself as plowing new ground.  Instead, in rather summary form, it plainly stated that, "[t]he government's disallowance of appellant's indirect costs, as reflected in the ACO's unilateral rate determination, and her imposition of penalties, are government claims subject to appeal under the CDA" and cited four prior Board decisions in support of that holding – every one of them pre-dating *Bell Helicopter*. *See* 07-1 BCA ¶ 33,563 at 166,251 (citing cases).  Thus, the notion that the unilateral setting of indirect cost rates constitutes a government claim is longstanding and not a change to the legal landscape after *Bell Helicopter*.  Indeed, as discussed at length above, *Bell Helicopter* does not rest on the price definitization being a non-monetary claim.  Hence, LM's fixation on *Fiber Materials'* allowance of a non-monetary government claim is of far less moment than LM appears to think.

Moreover, on the merits, the CO's unilateral establishment of indirect cost rates, coming, as it must, after provisional billing and payment for indirect costs is different than unilateral price definitization when already-incurred costs have been paid, but the definitive price has not.  The former almost always will entail a refund to the government, even if the amount is not necessarily calculated by the CO and demanded at the time she or he issues their decision establishing the rate.  To be sure, LM has proposed a hypothetical in which it is possible that the contractor's rejected indirect cost rates were higher than those for which it billed, thus leading to the imposition of rates lower than it requested, but equal to the amount that it had billed such that no money was owed to the government (*see* app. opp'n at 41), but that strikes us as highly unlikely and none of the cited cases show that to have actually occurred and been held to be a government claim.  Perhaps it might happen on rare occasion, but the general character of a unilateral indirect cost rate determination by the government is the taking away of money expected by the contractor.[13]

---

[12] LM's brief makes the statement that *Fiber Materials* clarified that such claims "must" be non-monetary (app. opp'n at 39).  We do not follow this argument.  There is no reason apparent to us that a CO decision unilaterally setting indirect cost rates could not also expressly demand the return of a sum certain from the contractor.

[13] The government did not address unilateral rate determinations in its reply brief and this issue was not addressed by LM, so we make the following observation without the benefit of argument:  we note that, under the FAR provision governing *Fiber Materials*, FAR 52.216-7(d)(4), a disagreement about rates is considered a contract dispute, subject to the Disputes clause, *see* 07-1 BCA ¶ 33,563 at 166,235 (quoting the FAR), while the law tells us that the CO's deciding a unilateral rate (presumably *after* the disagreement) is the subject of the claim.  The clauses governing unilateral price definitization here do not refer the parties to the Disputes clause until *after* the CO has issued her or his determination.  *See* FAR 52.216-25(c) and DFARS 252.217-7027(c).  Thus, though we do not

B.  Arguments That We Have Ruled Contrary to *Bell Helicopter* Are Mistaken

Judge Clarke argues that prior opinions of ours have held that definitization actions are government claims, thus reflecting the Board's determination that *Bell Helicopter* is no longer good law.  We have not so found.

The primary case discussed by Judge Clarke for this proposition is *Litton Sys., Inc., Applied Tech. Div.*, ASBCA No. 49787, 00-2 BCA ¶ 30,969, which he characterizes as stating that a unilateral determination constituted a government claim.  To be sure, if *Litton* said as much, we would be facing a very different legal terrain!  But it does not. The 2000 opinion cited by Judge Clarke, in fact, is merely reporting the result of a 1993 decision in the same case on a motion to dismiss.  *See Litton Sys., Inc., Applied Tech. Div.*, ASBCA No. 49787, 93-2 BCA ¶ 25,705.  The 1993 opinion did not hold that a unilateral determination was a government claim; rather, it held that in a case involving a firm fixed price contract, a unilateral reduction in the price, requiring the return of money by the contractor, constituted a government claim.  This is consistent with our view of the law, which is that CO decisions requiring the return of money to the government (somewhat like was seen in *General Electric*, where it was a possibility), are government claims.  Again, this does not affect the continued viability of *Bell Helicopter*.  If it did, we would have expected the case to have been referenced in *Litton*, but it was not.

C.  Arguments That *Bell Helicopter* was Decided Incorrectly are Unhelpful

A number of the arguments advanced by LM and Judge Clarke are premised, either explicitly or implicitly, upon the notion that the Board erred in the first instance when it issued *Bell Helicopter*.  No matter how compelling such arguments might be to the persons advancing them, they are not helpful to us today.  As discussed above, being bound by precedent means that we do not afford ourselves the power to second-guess our prior opinions, but only to determine whether they, or their legal underpinnings, have been overruled since they were issued.

One example of LM's implicitly arguing that *Bell Helicopter* was incorrectly decided is its reliance on the portion of the FAR governing definitizations and that provision's referring the parties to the Disputes clause as a means for the contractor to appeal.  This, LM argues, indicates that the FAR Council intended the contractor to have the right to direct appeal to the Board in the event of a unilateral definitization action. (*See* app. opp'n at 9).  The problem with this argument is that our predecessors who wrote *Bell Helicopter* faced circumstances involving an almost identical clause providing recourse to the Disputes clause.  *See Bell Helicopter*, 88-2 BCA ¶ 20,656 at 104,392.  If

---

necessarily see this as dispositive, the two contracting actions may not be treated quite so much alike as LM argues.

11

that clause did not cause our predecessors to question their result, it would be disingenuous of us to find that it provided a basis for revisiting the opinion now.

LM also argues throughout its motion that the CO's decision here is an "adjustment or interpretation of contract terms" (app. opp'n at *passim*). But, again, that argument was squarely rejected by both the original *Bell Helicopter* decision and the decision denying the contractor's request for reconsideration. *See* 88-2 BCA ¶ 20,656 at 104,392; *Bell Helicopter Textron*, 88-3 BCA ¶ 21,048 (denial of request for reconsideration). And for that reason, we continue to reject it here: nothing has changed justifying a different result.

Moreover, we reject LM's request, made in a footnote (app. opp'n at 48, n.19), to permit a "protective appeal" in a matter over which we possess no jurisdiction. We are confident that LM has the means and the time to submit a claim it deems appropriate before the expiration of the statute of limitations.

## CONCLUSION

For the reasons discussed above, we are unpersuaded that the holding of *Bell Helicopter*, that a unilateral contract definitization is not a government claim, has been overturned or that its legal underpinnings have been sufficiently eroded as to effectively overrule it. Accordingly, we dismiss these appeals for lack of jurisdiction because LM has submitted no claims to the CO for final decision.

Dated: June 24, 2021

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

12

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

JAMES SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I dissent (see attached opinion)

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

13

I respectfully dissent. I was the original judge assigned to this appeal and drafted the decision with which my colleagues disagree. Rather than appending my entire draft decision as my dissent as I have done before, I present only a portion thereof.

*Bell did not Consider "Other Relief"*

This appeal involves the question of if a government unilateral definitization of an Undefinitized Contract Action (UCA) is a government claim supporting Board jurisdiction similar to a termination for default. The majority cites *Bell Helicopter Textron*, ASBCA No. 35950, 88-2 BCA ¶ 20,656, *aff'd on mot. for recon.*, 88-3 BCA ¶ 21,048 to justify denying jurisdiction. *Bell* does indeed hold that a unilateral definitization of a UCA is not a government claim. In *Bell* we held the unilateral definitization was routine contract administration and not a contract adjustment. Aside from the fact I do not agree with that holding, I rely on the Disputes Clause, FAR 52.233-1 that defines a claim as a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, for the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. In *Bell* this Board based its decision on only the first two elements of a claim:

> The contracting officer's decision was not premised on an issue of contract interpretation or adjustment. Instead, the contracting officer's action was the initial establishment of the contract price pursuant to Clause H–1.

(*Bell*, 88-2 BCA ¶ 20,656 at 104,392). This Board did not analyze H-1, or consider "other relief arising under or relating to this contract." It seems to me that this omission in the 1988 decision limits *Bell*'s scope and leaves the door open for this Board to consider if a unilateral definitization is a government claim based on, "other relief arising under or relating to this contract." If my colleagues had allowed such consideration, I believe we would have found jurisdiction based on "other relief." This approach would leave *Bell* intact but limit it to consideration of "contract interpretation or adjustment." Our decision in this appeal by Lockheed Martin (LM) would allow our jurisdiction over a unilateral definitization as "other relief" relating to the contract and not conflict with *Bell*.

*Bell Has Not Been Followed*

In addition to my primary argument stated above, I trace the evolution of case law in this area concluding that unilateral definitization of a UCA is a government claim. I believe *Bell* was wrongly decided and rightly ignored over the last 40 years. *Bell* relies on a finding that unilateral definitization of a UCA is a matter of routine contract administration, like appointing a new Contracting Officer's Representative (COR).

Unilateral Definitization is not routine contract administration. It is the contracting officer, after reaching an impasse on price, unilaterally imposing a lower contract price on a contractor. *See Bell*, 88-2 BCA ¶ 20,656 at 104,392 quoted below. Because unilateral definitization is not routine contract administration, it is an "adjustment of contract terms" as envisioned by the Disputes Clause. I understand that bad decisions may never-the-less be binding law, but I am not inclined to resurrect *Bell* after 40 years of conflicting treatment to affirm its bad decision as good law today.

*Developing Case Law*

The parties, particularly LM, cited numerous cases and made alternative arguments. I selected cases cited by the parties that represent the development of the law in this area and discuss them in chronological order to understand where the somewhat chaotic jurisdictional case law is today. I agree with LM that "the modern interpretation of a CDA-cognizable "claim" is "broad" and "expansive" which supports my argument.

I start where the Air Force (AF) starts in its motion to dismiss, with the March 21, 1988 decision in *Bell Helicopter Textron*, ASBCA No. 35950, 88-2 BCA ¶ 20,656, *aff'd on mot. for recon.*, 88-3 BCA ¶ 21,048. In *Bell* we dealt with its appeal of the AF's unilateral definitization of a UCA with which Bell disagreed. We held that the unilateral definitization was not a government claim but an initial establishment of the contract price required by the contract:

> On 13 September 1985, appellant was awarded subject Advance Acquisition Contract (AAC) for the production of certain aircraft and associated data and support. Clause H–1 of the contract provided that the parties would promptly enter negotiations to definitize the contract price. The clause further provided that "the Contracting Officer may, with the approval of the Head of the Procuring Activity, determine a reasonable price in accordance with Federal Acquisition Regulation subject to appeal by the Contractor as provided in the 'Disputes' clause of the contract." After nearly two years of negotiations, the contracting officer, on 30 September 1987, issued a unilateral modification establishing a total contract price of $79,076,088 (later amended to $76,463,678). In an accompanying cover letter, the contracting officer stated that the unilateral modification was his final decision and advised the contractor of its appeal rights.
>
> . . . .

15

> Appellant argues further that the contracting officer's decision was a Government claim in that it was a written assertion that "sought 'as a matter of right' ... pursuant to Clause H–1 of the contract ... 'the adjustment or interpretation of contract terms....'" We disagree. The contracting officer's decision was not premised on an issue of contract interpretation or adjustment. Instead, the contracting officer's action was the initial establishment of the contract price pursuant to Clause H–1. The contracting officer was merely performing the duty prescribed by the contract when the parties failed to reach agreement on a price. Again, the contracting officer's action did not amount to a Government claim.

(*Bell*, 88-2 BCA ¶ 20,656 at 104,392). This is the case the AF relies upon in support of its motion. Significantly, the Board's analysis of H-1 relies on "contract interpretation or adjustment" but fails to consider the third element of a claim / jurisdiction in the Disputes Clause, FAR 52.233-1(c), "or other relief arising under or relating to this contract." As argued above, I believe this is a fatal omission from the analysis of H-1 in view of the subsequent decisions that increasingly rely on this third element of jurisdiction and the fact that *Bell* has not been followed in 40 years of subsequent decisions.

On June 16, 1988, the Court of Appeals for the Federal Circuit (CAFC) issued *Malone d/b/a/ Precision Cabinet Co. v United States*, 849 F.2d 1441 (Fed. Cir. 1988) where the Court held that a termination for default was a government claim: "This case, however, concerns a *government* claim against a contractor. Caselaw supports the proposition that a government decision to terminate a contractor for default is a government claim (Case Cites Omitted)." *Malone*, 849 F.2d 1441, 1443. This unremarkable decision that a termination for default is a government claim is used later in our case analysis to expand the Board's jurisdiction. *See Appeals of General Electric Company and Bayport Construction Corporation*, ASBCA Nos. 36005, 38152, 39696, 91-2 BCA ¶ 23,958.

On March 21, 1998, the ASBCA issued *LTV Aerospace and Defense Co.*, ASBCA No. 35674, 89-2 BCA ¶ 21,858 where the Armed Services Board of Contract Appeals (ASBCA or "Board") held that a unilateral price reduction pursuant to an Economic Price Adjustment Clause was a government claim. The Board distinguished the Board's decision in *Bell*:

> Further, unilateral reduction of the contract price pursuant to an EPA clause is analagous to cases concerning alleged defective cost or pricing data in which the Government seeks

> a contract price reduction. We have held that those cases involve a Government claim, not a contractor claim.
>
> The Government's reliance on *Bell Helicopter Textron*, ASBCA No. 35950, 88-2 BCA ¶ 20,656, aff'd on mot. for recon, 88-3 BCA ¶ 21,048 is misplaced. In that case, the contracting officer unilaterally definitized the total contract price because a clause in the contract required him to do so. In that case, we specifically found that "the Government has not and is not seeking any recourse or payment from appellant." 88-2 BCA ¶ 20,656 at 104,392. In this case, the Government by final decision unilaterally reduced the contract price by $914,830 and subsequently, by modification, deobligated contract funds by that amount.

(*LTV*, 89-2 BCA ¶ 21,858 at 109,951). I see that the Board relied on a sum certain price reduction and deobligation of that amount to support its finding of a government claim. This view of what constitutes a government claim is relaxed in later decisions.

On September 29, 1989, the ASBCA issued *H.B. Zachry Co.*, ASBCA No. 39202, 90-1 BCA ¶ 22,342 where the Board held that a government order that *Zachry* replace or repair defective piping was not a government claim because the government did not demand payment for the defective work. *Zachry*, 90-1 BCA ¶ 22,342 at 112,287. As I explain below, the Senior Deciding Group (SDG) overruled *Zachry*. I include it to show the Board's change in thinking over time.

On April 23, 1991, the ASBCA SDG issued *Appeals of General Electric Company and Bayport Construction Corporation*, ASBCA Nos. 36005, 38152, 39696, 91-2 BCA ¶ 23,958 where the SDG held that contracting officer's direction to the contractor to correct or replace previously accepted contract work because of alleged latent defects, and not demanding or asserting any right to the payment of money is a government claim:

> A demand for refund of part of the contract price in the present cases would indisputably have represented seeking "the payment of money in a sum certain"—the first category of "claim." The parallel, alternative remedy elected by the Government instead—a direction to correct or replace the defective work at no increased cost—seems to us to fall squarely within the parallel third category of "claim" recognized by the FAR and Disputes clause definitions: i.e., "other relief arising under ... the contract." We see no reason to treat such a demand for correction or replacement under

17

the Inspection clause, absent a demand for monetary relief, any differently for jurisdictional purposes than a termination for default under the standard Default clause, long recognized as a proper Government claim before there is any monetary claim by either party, as discussed earlier, or any differently than the various kinds of nonmonetary Government claims we discuss in III below.

(*General Electric*, 91-2 BCA ¶ 23,958 at 119,944). Unlike *Bell*, the SDG relied on the third type of claim "other relief" as do I. In its decision the SDG "overruled" *Zachry*:

> To the extent that *Zachry* suggests either (i) narrowly, that a Government demand for correction or replacement of accepted contract work because of alleged latent defects, in lieu of demanding payment for unsatisfactory work, is not the proper subject of a contracting officer's decision asserting a Government claim, or (ii) more broadly, that there can be no nonmonetary Government claims apart from default terminations, it conflicts both with the FAR 33.201 definition of the term "claim" and with the decisions of this Board recognizing various kinds of nonmonetary Government claims other than terminations for default (discussed in III above).
>
> . . . .
>
> To the extent any part of the decision in *Zachry* is inconsistent with the holdings herein, it is overruled.

(*General Electric*, 91-2 BCA ¶ 23,958 at 119,946). There was one concurring decision by Judge Williams and three dissenting decisions by Judges Spector, Gomez and Riismandel. Judge Williams wrote in part:

> While I share the dissenting judges' legitimate concern that the Board not become embroiled in matters that are primarily contract, administration it is my opinion that revocation of "final acceptance" can, and under the circumstances of these appeals does, exceed the bounds of ordinary contract administration resulting in a Government claim under the FAR DISPUTES clause definitions. To hold otherwise would, in my view, unduly restrict the interpretation of the disputes clause definition of claims for "other relief arising under or relating to the contract."

18

(*General Electric*, 91-2 BCA ¶ 23,958 at 119,947). Dissenting Judge Spector cited *Bell Helicopter Textron*, ASBCA No. 35950, 88-2 BCA ¶ 20,656, *aff'd on mot. for recon.*, 88-3 BCA ¶ 21,048 and argues *General Electric* "smack[s]" of contract administration:

> Under our precedents the direction of the contracting officers to perform the alleged extra work, even if designated a "final decision," would not be a Government claim. H.B. Zachry Co., ASBCA No. 39202, 90–1 BCA ¶ 22,342; Winding Specialists Co., Inc., ASBCA No. 37765, 89–2 BCA ¶ 21,737. See also, Woodington Corporation, ASBCA No. 37272, 89–2 BCA ¶ 21,602; Bell Helicopter Textron, ASBCA No. 35950, 88–2 BCA ¶ 20,656, motion for recon. denied 88–3 BCA ¶ 21,048. As stated in H.B. Zachry Co., supra, "This is a classic case where a contractor should perform the work and file a claim."

(*General Electric*, 91-2 BCA ¶ 23,958 at 119,947). Dissenting Judges Gomez and Riismandel also express concern over extending claims jurisdiction to matters of contract administration. (*General Electric*, 91-2 BCA 23,958 at 119,948-949). This idea of not extending claims jurisdiction over contract administration is precisely the theory employed in *Bell* and is relegated to the dissent in *General Electric*.

The SDG's decision in *General Electric* was appealed to the CAFC. On February 24, 1993 the CAFC issued *Garrett v. General Electric Co.*, 987 F.2d 747 (Fed. Cir. 1993) where the Court affirmed *Appeals of General Electric Company and Bayport Construction Corporation*, ASBCA Nos. 36005, 38152, 39696, 91-2 BCA ¶ 23,958 holding that nonmonetary direction to correct or replace defective engines constitutes "other relief" supporting Board jurisdiction:

> The Navy directed GE to correct or replace the defective engines. Under the contract, the Navy had three options. It could have reduced the contract price or demanded repayment of an equitable portion of the contract price. Rather than seek these monetary remedies, the Navy chose "other relief arising under ... the contract." The Navy's alternative to a monetary remedy—the directive to correct or replace defective engines—constitutes "other relief" within the FAR's third category of "claims." Thus, the regulations, GE's contract, and the facts of this case suggest that the Navy's choice of relief—a substitute for monetary remedies—fit within the CDA concept of "claim." Accordingly, the Board correctly

19

determined its jurisdiction to adjudicate this Government claim.

(*Garrett*, 978 F.2d 747 at 749).  The CAFC's affirmance of the SDG's reliance on "other relief" to support our jurisdiction over government direction to replace defective engines supports my belief that a unilateral definitization is likewise a government claim.

On August 12, 1996, the ASBCA issued *Outdoor Venture Corp.*, ASBCA No. 49756, 96-2 BCA ¶ 28,490 that involved the government's demand that Outdoor Venture repair or replace non-conforming tents that had already been accepted pursuant to the contract's warranty clause.  Outdoor Venture appealed to this Board.  The government moved to dismiss for lack of jurisdiction contending that the CO had not issued a final decision.  In its decision holding that the demand pursuant to the warranty clause was a government claim, this Board commented on SDG's and CAFC's decisions in *General Electric*:

> We construed this regulation in *General Electric Co.*, ASBCA Nos. 36005, 38152, 91-2 BCA ¶ 23,958, aff'd 987F.2d 747 (Fed. Cir. 1993).  There, we held that a Government direction to a contractor to correct or replace work allegedly containing latent defects was appealable because it constituted a CDA claim, rather than merely being a matter of contract administration.  More specifically, the Board ruled that such Governmental demands fell into the FAR 33.201 category of claims "related to" the contract.  Because the decision asserting the claim was issued by the contracting officer, involved each party's rights under the contract, and was adverse to the contractor, we found that the CDA's jurisdictional requirements were satisfied.
>
> For similar reasons, we conclude that the Government's demand that OVC proceed with the warranty work constitutes a Government claim.  Accordingly, OVC may waive the other defects contained in the letter of 15 April 1996.

(*Outdoor Venture*, 96-2 BCA ¶ 28,490 at 142,273)

On May 28, 1999, the CAFC issued *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260 (Fed. Cir. 1999) where the Court, relying on its decision in *Garrett v. General Electric Co.*, 978 F.2d 747, held that the Court of Federal Claims had

jurisdiction over a request for declaratory judgment that an option exercise was invalid. The CAFC discussed its decision in *Garrett*:

> In the *Garrett* case, the contracting officer directed General Electric to correct or replace certain allegedly defective engines after the engines had been accepted and certain latent defects had appeared. The Board of Contract Appeals treated the contracting officer's directive as a "claim" over which the Board of Contract Appeals had jurisdiction, and this court agreed. The court's analysis in *Garrett* is inconsistent with the government's theory of this case, since General Electric could have performed as directed and sought monetary compensation for its work afterwards. Instead, the court held that the nonmonetary claim provided a viable basis for board jurisdiction. Since the court further held that board jurisdiction is in "parity" with the jurisdiction of the Court of Federal Claims, the *Garrett* case stands for the proposition that nonmonetary claims are not outside the jurisdiction of the Court of Federal Claims simply because the contractor could convert the claims to monetary claims by doing the requested work and seeking compensation afterwards.

(*Alliant Techsystems*, 178 F.3d 1260, 1270). Again the CAFC affirms that nonmonetary claims support jurisdiction, this time at the Court of Federal Claims.

On April 28, 2000, the ASBCA issued *Litton Systems, Inc., Applied Technology Division*, ASBCA No.49787, 00-2 BCA ¶ 30,969 where the Board held it had jurisdiction over Litton's (ATD) claim because it was filed in response to a government nonmonetary claim:

> The Government moved to dismiss ATD's allegations of additional work for lack of jurisdiction because no claim had been submitted to the contracting officer. We found that ATD's allegations of additional work were raised only as a defense to the Government's unilateral definitization of the 4436 Contract and were sufficiently intertwined with the Government's claim for a reduction of the contract price to fall within the scope of our jurisdiction.

(*Litton Systems*, 00-2 BCA ¶ 30,969 at 152,834). Here the Board expanded its jurisdiction over a government nonmonetary claim for unilateral definitization, to cover a monetary claim by Litton that was not presented as a claim to the CO for a final decision.

More importantly for our purposes, the Board held that unilateral definitization was a government claim.

On August 29, 2011, the CAFC issued *Todd Construction v. United States*, 656 F.3d 1306 (Fed. Cir. 2011) where the Court affirmed the Court of Federal Claims jurisdiction over a Corps of Engineers performance evaluation:

> Todd Construction, L.P. ("Todd") is a government contractor. Todd filed suit in the Court of Federal Claims ("Claims Court") under the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq.*, alleging that the United States Army Corps of Engineers (the "government") gave it an unfair and inaccurate performance evaluation. The Claims Court held that the CDA provided it with subject matter jurisdiction over such a claim, but dismissed Todd's complaint for lack of standing and failure to state a claim. *Todd Constr., L.P. v. United States*, 85 Fed.Cl. 34 (2008) ("*Todd I*"); *Todd Constr. L.P. v. United States*, 88 Fed.Cl. 235 (2009) ("*Todd II*"); *Todd Constr. L.P. v. United States*, 94 Fed.Cl. 100 (2010) ("*Todd III*"). We affirm both the Claims Court's determination that it had jurisdiction under the CDA and its dismissal of Todd's complaint on the grounds of lack of standing and failure to state a claim.
>
> . . . .
>
> Not only is the term "claim" broad in scope, the "relating to" language of the FAR regulation itself is a term of substantial breadth. The term "related" is typically defined as "associated; connected."
>
> . . . .
>
> As we made clear in *Applied Companies*, CDA jurisdiction exists when the claim has "some relationship to the terms *or performance* of a government contract." 144 F.3d at 1478 (emphasis added) [footnote omitted]. A contractor's claim need not be based on the contract itself (or a regulation that can be read into the contract) as long as it relates to its performance under the contract [Footnote omitted].

(*Todd*, 656 F.3d 1306, 1312, 1314). Jurisdiction over performance ratings must mark the outer boundary of our jurisdiction over non-monetary government claims.

22

On May 31, 2017, the Court of Federal Claims issued *L-3 Communications Integrated Systems L.P. v. United States*, 132 Fed. Cl. 325 (2017) where the Court held that in a unilateral definitization case, where L-3 sought sum certain damages, that L-3 was required to submit a certified claim to the CO:

> In this case, L–3 contends that it suffered monetary losses because the Air Force imposed arbitrary, capricious, and unreasonable rates for the two CLINs at issue here when it definitized the contract. The government argues that this Court lacks jurisdiction over L–3's complaint because, among other reasons, L–3 never presented a certified claim to the CO for payment of a sum certain to cover the losses it alleges it suffered. Def.'s Mot. at 5–6. The Court agrees.

(*L-3 Communications*, 132 Fed. Cl. 325, 331). In this case L-3 contended it suffered losses in a sum certain amount and submitted what it argued was a claim, but failed to certify its claim. The Court was not dealing with the facts in *Bell* or "administrative act" argument.

*Summary and Conclusion*

From the March 1988 *Bell* decision through the May 31, 2017 *L-3* decision to the present, I found no case actually deciding a case similar to *Bell*[14]. In our 1988 *Bell* decision, the Board declined to treat the unilateral definitization of a contract price as a government claim because "The contracting officer was merely performing the duty prescribed by the contract when the parties failed to reach agreement on a price." *Bell*, 88-2 BCA ¶ 20,656 at 104,392. This "contract administration" approach has not been followed in later cases. Additionally, the Board's jurisdictional analysis of H-1 relied on the Disputes Clause's, FAR 52.233-1(c), first two elements of a claim, "contract interpretation or adjustment" but failed to consider the third element of a claim in the Disputes Clause, "or other relief arising under or relating to this contract." In 1991 the Board's SDG relied upon "The parallel third category of 'claim' recognized by the FAR and Disputes clause definitions: i.e., 'other relief arising under . . . the contract'" to hold that a "demand for correction or replacement under the Inspection Clause, absent a demand for monetary relief," should be treated no differently than a termination for default which is a government claim. *General Electric*, 91-2 BCA 23,958 at 119,944-45. The SDG specifically overruled *Zachry* which required a demand for payment for defective work under the inspection clause as a prerequisite to being considered a government claim, a direct conflict with the SDG's *General Electric* decision. *General*

---

[14] According to Westlaw bell has been cited 17 times but not one of the citations was a decision actually dealing "administrative act" facts and argument in *Bell*.

*Electric*, 91-2 BCA 23,958 at 119,946. Although *Bell* was not similarly overruled, it was cited in Judge Spector's dissent and by inference its "contract administration" approach was not looked upon favorably by the majority of the SDG. I view this as significant. On appeal the CAFC affirmed agreeing that the "other relief" category of claims was "a substitute for monetary remedies" and "fit within the CDA concept of 'claim'" *General Electric*, 987 F.2d 747, 749. Again, a significant departure from the logic in *Bell*. In *Outdoor Venture,* the Board explained that *General Electric* established that government demands that a contractor correct or replace latent defects was a government claim. In *Alliant Techsystems,* the CAFC followed *Garrett's* holding that a nonmonetary claim provided a viable basis for board jurisdiction. In *Litton Systems, Inc., Applied Technology Division* (ADT) we found that the unilateral definitization of a contract was a government claim contradicting our 1988 decision in *Bell*. In *Todd Construction,* the CAFC affirmed that the Court of Federal Claims had jurisdiction over a challenge to a COE performance evaluation.[15] In our May 31, 2017 *L-3* decision L3 submitted an uncertified claim and that is what the court had before it, not the *Bell* argument. Our conclusion is inescapable, in 40 years of decisions, *Bell* has not been followed. Contrary to *Bell*[16], a unilateral definitization of a UCA should now be considered a government claim over which we take jurisdiction.

CONCLUSION

In accordance with the above analysis, I would deny the Air Force's motion.

Dated: June 24, 2021

_____
CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

---

[15] As seen in *L-3 Communications*, *Securiforce*, *Greenland*, and *Parsons*, these non-monetary government claim cases do not abandon the fact that if the remedy sought by a contractor is essentially monetary, the contractor must file a claim with the contracting officer.

[16] *Bell* may still have precedential value for a yet unidentified act of minor contract administration, but why would any contractor choose to appeal such an action.

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 62505, 62506, Appeals of Lockheed Martin Aeronautics Company, rendered in conformance with the Board's Charter.

Dated:  June 25, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals